**In the Matter of NINETY–ONE THOUSAND DOLLARS IN UNITED STATES CURRENCY.**

**Misc. No. 88–174 P.**

United States District Court, D. Rhode Island.

June 20, 1989.

David N. Cicilline, Providence, R.I., for petitioners Myra Blanco and Katia Garcia.

Michael Iannotti, Asst. U.S. Atty., Providence, R.I., for U.S.

## OPINION AND ORDER

PETTINE, Senior District Judge.

This case is before the Court on petitioners' Fed.R.Crim.P. 41(e) Motion for Return of Property concerning currency seized by agents of the federal Drug Enforcement Administration ("DEA") in the course of a warrantless search stemming from a drug enforcement action. The sole issue to be decided is whether this Court lacks jurisdiction to order the return of the currency pursuant to Rule 41(e) in light of the government's initiation of administrative forfeiture proceedings against the currency, pursuant to 21 U.S.C. Sec. 881(d) and 19 U.S.C. Sec. 1607, six weeks after petitioners' filed their Rule 41(e) Motion but before this Court had heard or decided the matter. For the reasons set forth below, this Court concludes that, under the facts and circumstances of this case, it would be imprudent to exercise its jurisdiction to decide petitioners' Motion and thus declines on equitable grounds to rule, permitting the matter to be addressed instead in the context of the Section 881(d) forfeiture proceeding.

## I. BACKGROUND OF PETITIONERS' MOTION

On December 12, 1988, Alphonso Blanco was arrested and charged with distributing, attempting to distribute and conspiring to distribute cocaine. Incident to the arrest, DEA agents seized $1,020.00 in United States currency from Blanco's person and also obtained a search warrant for Blanco's residence. Prior to the execution of the warrant, however, DEA agents stopped a vehicle operated by Myra Blanco and containing a passenger, Katia Garcia. After Myra Blanco was told by the agents that they had a warrant to search her residence, the government contends, Ms. Blanco gave the agents her consent to search the trunk of the vehicle. There the agents discovered and seized $81,259.00 in United States currency. Sometime thereafter, pursuant to the execution of the search warrant for the Blanco residence, agents seized an additional $4,570.00. In addition, DEA agents obtained a second search warrant for the home of Katia Garcia and there found and seized $3,245.00. Neither Myra Blanco nor Katia Garcia were arrested or charged with any criminal offense.

On December 27, 1988, Myra Blanco and Katia Garcia joined in filing a Rule 41(e) Motion for Return of Property, alleging that the government had illegally stopped and searched their vehicle and illegally seized and retained their property,[1] and

---

1. Myra Blanco's and Katia Garcia's Rule 41(e) Motion demands the return of $91,000.00.

However, the total seized during the entire operation was $90,094.00, the total seized from the

demanding the currency's return. The government objected on January 5, 1989, arguing that this Court lacked jurisdiction to decide the Rule 41(e) Motion since administrative forfeiture proceedings had been initiated against the currency by the DEA and thus petitioners' remedy lay in the administrative realm. In actuality, however, it was not until February 8, 1989, six weeks after claimants' filed their Rule 41(e) Motion but six days before this matter came on for hearing, that the government filed formal Notice of Forfeiture pursuant to 19 U.S.C. Sec. 1607. Finally, on February 14, 1989, this Court held the hearing on petitioners' Rule 41(e) Motion, which it continued in order to receive supplemental memoranda of law regarding the implications for the disposition of the Motion of the recently decided case of *Floyd v. United States*, 860 F.2d 999 (10th Cir. 1988). The supplemental memoranda having been received February 16, 1989, this Court now decides the case.

## II. RELEVANT LAW

### A. *Federal Rule of Criminal Procedure 41(e)*

Rule 41(e) provides in its entirety:

**(e) Motion for Return of Property.** A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

Viewed in the context of the whole of Fed.R.Crim.P. 41, Rule 41(e) is best understood as one element of a system of procedural and remedial protections designed to safeguard the right, guaranteed by the Fourth Amendment to the Constitution, to be secure against unreasonable searches and seizures.[2] A codification of prior statutory and decisional law on the matters that it touches,[3] Rule 41 both articulates procedures for executing constitutionally permissible searches and seizures,[4] and provides remedies for cases in which property has been obtained in violation of the law.[5] More specifically, with regard to the remedies enumerated in the Rule, Sections 41(e), providing for the return of property unlawfully seized, and 41(f), providing for the suppression in any trial or hearing of evidence seized in contravention of the

---

two women was $89,074.00 and the amount seized incident to the allegedly illegal search of the Blanco vehicle was $81,259.00. It is thus unclear to the Court what money petitioners are asking be returned to them, although petitioners' Motion limits itself on its face to a claim for the money seized during the vehicular stop and search, that is to the $81,259.00 found in the trunk.

2. The Fourth Amendment to the Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

3. "This rule is a codification of existing law and practice." Notes of Advisory Committee on Rules.

4. Sections 41(a), 41(c), 41(d) and 41(g) prescribe procedures for obtaining and executing a constitutionally valid search warrant; section 41(b) specifies the property or persons subject to seizure with a warrant; and section 41(h) provides that the Rule's general provisions relating to searches and seizures preserve all other statutory provisions, even though inconsistent with the Rule, regulating searches and seizures in specific situations.

5. Both a repository of substantive rights and of procedural rules, the Fourth Amendment guarantees have been implemented through the elaboration of the warrant-upon-probable-cause requirement and through the creation of an array of remedies for illegal searches and seizures, among them the speedy and efficient responses to unlawful governmental takings codified in Rule 41.

Fourth Amendment,[6] restate judicial practices that for seventy-five years[7] have been among the principle tools through which the federal courts have implemented the Fourth Amendment guarantees,[8] focusing in particular on rectifying unlawful governmental takings. *See generally* WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 2d Secs. 661–678.

■ On its face, a Rule 41(e) motion for return of property is sweeping in scope, providing a remedy to any "person aggrieved by an unlawful search and seizure." The gravaman of the motion, however, is petitioner's dual assertion that the search and seizure procedures employed by law enforcement officials in a particular situation violated petitioner's Fourth and Fourteenth Amendment rights and deprived the complainant of property to which she was lawfully entitled. Thus, although the Rule is ostensibly broad enough to reach any unlawful seizure, a movant has no right to the return of property that is contraband or from which she has been somehow legally dispossessed.[9] *See, e.q., Shea v. Gabriel,* 520 F.2d 879, 882 (1st Cir.1975) (movant who made no showing that things seized were his lawful property, and not components of an illegal gambling business, not entitled to return of property); *Marger v. Bell,* 510 F.Supp. 9, 11–12 (D.Me. 1980) (movant not entitled to return of seized money assigned to him in violation of Federal Anti–Assignment Statute).

In addition, courts have returned repeatedly to the question of whether the Rule, cast as it is as a rule of criminal procedure, reaches situations in which a claimant, although under investigation, has not yet been indicted or situations in which the claimant is simply never subject to any criminal proceeding, the situation in the case at bar. In explicating this question, federal courts have variously found the authority to hear pre-indictment motions for return of property not only in the statutory grant of jurisdiction embodied in Rule 41(e) but also in the longstanding, non-statutory doctrine of equitable or "anomalous" jurisdiction,[10] typically relying on some amalgam of these jurisdictional bases to hear such motions without definitively ruling on exactly which theory applies in a particular case. *Compare, e.g., Centracchio v. Garr-*

---

6. As originally adopted and until 1972, Rule 41(e) combined the remedies currently decomposed into Rules 41(e) and 41(f) into a unified statement of a method for enforcing the constitutional guarantee against unreasonable searches and seizures. In 1972, however, the original Rule 41(e) was subdivided to require the motion to suppress evidence to be made in the trial court rather than in the district of seizure. *See* Advisory Committee Notes to the 1972 Amendments.

7. The practices codified in Rules 41(e) and 41(f) date at least to *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), in which the Supreme Court held that, in a criminal proceeding, federal courts must return property seized by federal officers in violation of the Fourth Amendment when application for its return is timely made and must exclude such property as evidence in any subsequent trial.

8. Other judicially created remedies devised by federal courts to redress an injury to Fourth Amendment rights are a civil claim for damages under the doctrine of *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 392, 91 S.Ct. 1999, 2002, 29 L.Ed.2d 619 (1971), injunctive relief and expungement of arrest records. For discussion of these and other remedies created by statute, such as an action for damages under 42 U.S.C. Sec. 1983 and the imposition of criminal penalties, see 1 W.R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT 2d Sec. 1.1–1.13 (1987).

9. "As amended, subdivision (e) provides for a return of the property if (1) the person is entitled to lawful possession *and* (2) the seizure is illegal. This means that the judge in the district does not have to decide the legality of the seizure in cases involving contraband which, even if seized illegally, is not be to returned." Advisory Committee on Rules' Notes to the 1972 Amendment.

10. The characterization as "anomalous" was first made by Judge Wyzanski in *Lord v. Kelley,* 223 F.Supp. 684 (D.Mass.1963), *appeal dismissed,* 334 F.2d 742 (1st Cir.1964), *cert. denied,* 379 U.S. 961, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965), who found the theoretical basis for such non-statutory jurisdiction in federal courts' inherent supervisory power over their officers, among them law enforcement agents bound by federal standards governing searches and seizures. *See also Go–Bart Importing Co. v. United States,* 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931) and progeny.

*ity,* 198 F.2d 382, 385–86 (1st Cir.), *cert. denied,* 344 U.S. 866, 73 S.Ct. 108, 97 L.Ed. 672 (1952) (petitioner's independent proceeding for return of property allegedly obtained by unconstitutional search and seizure, properly addressed to inherent power of the court to discipline its officers and properly entertained even prior to indictment, dismissed as lacking in equity) with *Shea v. Gabriel,* 520 F.2d 879 (1st Cir.1975) (petitioner who sought pre-indictment return of allegedly illegally seized currency, by filing both complaint invoking federal court's jurisdiction under its inherent power to discipline its officers and Rule 41(e) motion, not entitled to its return on either equitable or Rule 41(e) grounds).

Even more to the point in the context of this case, federal courts have relied on the same jurisdictional amalgam to justify hearing motions for the return of property when the movant is at substantial risk not for criminal prosecution but for entanglement in a subsequent administrative or civil proceeding. Thus, for example, the First Circuit Court of Appeals has opined in helpful dicta both that "Rule 41(e) ... while designed for a criminal setting ...arguably could cover a situation where civil administrative proceedings would occur in a different forum" and that the concept of anomalous jurisdiction, "although nurtured in a criminal setting," could confer upon a court "independent power to curtail the abuse of its own process" by ordering that property illegally seized not be retained for use in some subsequent civil proceeding. *In re Worksite Inspection of Quality Products,* 592 F.2d 611, 614–17 (1st Cir.1979) (holding that, even if district court had subject matter jurisdiction to decide motion for suppression of evidence brought by employer faced with OSHA administrative enforcement proceeding, it should in equity have refrained from doing so where constitutionality of evidence's seizure by OSHA inspectors could be adequately adjudicated in anticipated proceeding). *See also Richey v. Smith,* 515 F.2d 1239, 1243 (5th Cir.1975) (suit for return of property unlawfully seized by IRS agents can be maintained in equity even though filed prior to initiation of any civil or criminal proceeding flowing

from seizure of the property); *Hunsucker v. Phinney,* 497 F.2d 29 (5th Cir.1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975) (motion for return of property seized by IRS agents and suppression of its use as evidence in anticipated civil proceeding dismissed where exercise of non-statutory anomalous jurisdiction not warranted in equity and no independent statutory basis for jurisdiction existed).

The availability of alternative jurisdictional bases for a motion for return of property has been confirmed even more recently by the United States Supreme Court in the context of a case involving a movant at risk, as the movants in this case were at risk at the time of the filing of their motion, for civil forfeiture of currency. In *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), the petitioner moved for the return of money seized by Customs Service agents for alleged violations of the Bank Secrecy Act of 1970, claiming that the 18–month delay between the seizure of the currency and the filing of a civil forfeiture action violated her right to due process. Commenting on the claimant's assertion of a due process right to a judicial hearing on the question of forfeiture, the Court stated:

> A claimant is able to trigger rapid filing of a forfeiture action if he desires it. First, the claimant can file an equitable action seeking an order compelling the filing of the forfeiture action or return of the seized property.... If the claimant believes the initial seizure was improper, he could file a motion under Federal Rule of Criminal Procedure 41(e) for a return of the seized property....

Although uttered in response to an independent, post-indictment motion for return of property on due process grounds, this dicta establishes that the Supreme Court itself views a Rule 41(e) motion as an appropriate mechanism for seeking the return of property seized in violation of the Fourth Amendment when the property is at risk for a subsequent civil forfeiture proceeding, presumably because of the quasi-

criminal nature of such proceeding. *See United States v. United States Coin & Currency*, 401 U.S., 715, 718, 91 S.Ct. 1041, 1043, 28 L.Ed.2d 434 (1971); *Boyd v. United States*, 116 U.S. 616, 633–34, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1885) (forfeitures incurred by commission of offenses against the law, through civil in form, are in their nature criminal and are within the reason of criminal proceedings for all purpose of Fourth Amendment). In addition, the First Circuit has specifically relied on the reasoning of *Eight Thousand Eight Hundred and Fifty Dollars ($8,850)* in expressing the view that a Rule 41(e) motion for return of property is available to persons aggrieved by an unconstitutional seizure executed precedent to civil forfeiture of property subject to forfeiture pursuant to the anti-drug abuse laws applicable to the instant action. *In re Application for Warrant to Seize One 1988 Chevrolet Monte Carlo and One 1987 Chevrolet Camaro*, 861 F.2d 307, 311 n. 3 (1st Cir.1988) (under aegis of Fed.R.Crim.P. 41(e), persons aggrieved can file motions for return of property); *Application of Kingsley*, 802 F.2d 571, 580 [11] (1st Cir.1986) (Coffin, concurring) (due to quasi-criminal nature of administrative forfeiture proceedings, claimants in petitioner's position must be permitted to seek return of property seized in violation of Constitution by filing a motion pursuant to Fed.R.Crim.P. 41(e)).

Whether, however, such a "motion standing in air" is conceptualized as an independent action in which the claimant's petition is styled as a "complaint" initiating a civil action for return of property or as a Rule 41(e) motion heard in anticipation of the movant's being subjected to further criminal or civil proceedings, federal courts consistently exercise jurisdiction in such cases subject to equitable principles and further exercise it only with "caution and re-

straint." As succinctly stated by the Fifth Circuit:

> The applicability of equitable principles is the same whether the present action is viewed as one brought under Rule 41(e) Fed.R.Crim.P. or as one premised on the equity jurisdiction of the District Court.... As the Court of Appeals for the District of Columbia Circuit has observed, Rule 41 "is a crystallization of a principle of equity jurisdiction. That equity jurisdiction persists as to situations not specifically covered by the Rule. Alternatively the same result can be reached by a broad reading of the Rule." (citation omitted)

*Hunsucker v. Phinney*, 497 F.2d at 34.[12] Thus in the First Circuit, Rule 41(e) motions filed in response to unlawful seizures by federal agents but before the initiation of further proceedings by the authorities are evaluated by balancing the same equitable considerations used to evaluate the appropriateness of an exercise of anomalous jurisdiction, namely:

1. whether the government's seizure involved a clear violation of the Fourth Amendment, amounting to a "callous disregard for ... constitutional rights";

2. whether the motion is needed to avoid the likelihood that movants will suffer irreparable harm; and

3. whether movants have an adequate remedy at law in the absence of the motion.

*Compare, e.g., Angel–Torres v. United States*, 712 F.2d 717 (1st Cir.1983) (pre-indictment Rule 41(e) motion for return of property seized by FBI agents pursuant to a search which went beyond scope of search warrant "turns primarily on equitable considerations") with *In re Worksite Inspection of Quality Products, Inc.*,

---

**11.** Although the holding of *Kingsley* has been superseded by statute, as explained in *In re Warrant to Seize One 1988 Chevrolet Monte Carlo*, the latter case continues to cite with approval the Coffin concurrence in *Kingsley*, on which this opinion draws.

**12.** The intimate connection between the doctrine of equitable jurisdiction and Rule 41(e)

has been remarked on by other courts as well. *See, e.g., Pieper v. United States*, 460 F.Supp. 94, 97 (D.Minn.1978), *aff'd*, 604 F.2d 1131 (8th Cir. 1979) (doctrine of equitable or anomalous jurisdiction meant to cover any situation where Rule 41(e) does not apply and where federal law enforcement officer performs illegal search and seizure).

592 F.2d at 616 (enumerating equitable considerations going to appropriateness of an exercise of anomalous jurisdiction).[13]

In sum, at least in the First Circuit, a motion for return of property lies whenever property has been seized by federal agents in violation of the Fourth Amendment and anticipated subsequent proceedings, whether criminal or civil in nature, have not been initiated by indictment or complaint. Further, regardless of the theory of jurisdiction that applies in such a case, the propriety of an exercise of jurisdiction is determined on equitable grounds, assuming of course that the court has not been explicitly ousted from jurisdiction in a particular instance. The case at bar raises the further question, however, of how federal courts should respond to a motion for return of property when, during the pendency of the motion, a subsequent proceeding is initiated. Extrapolating from the history outlined above, it is clear that the fate of such a motion must also turn on equitable considerations, among them the avenues available to the movant for vindicating her constitutional rights in the newly initiated proceeding. Cf. In re Worksite Inspection of Quality Products, 592 F.2d at 615 (regardless of theory of jurisdiction applicable to motion to suppress illegally seized evidence in subsequent civil proceeding, jurisdiction shall in no event be exercised unless movant clearly demonstrates that constitutional rights cannot be adequately adjudicated in pending or anticipated enforcement proceeding). To determine, then, the propriety of an exercise of jurisdiction by this Court in the case at bar, I necessarily turn to a consideration of the civil forfeiture provisions through which the government asserts its right to continued possession of the allegedly illegally seized property.

B. *Administrative Forfeiture Under 21 U.S.C. Section 881*

The Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, Title II, Sec. 511, 84 Stat. 1276 (1970), as amended, provides for the civil forfeiture of property either used to facilitate drug transactions or acquired as the proceeds of such criminal activity. To be subject to forfeiture under the Act, the property at issue must belong to one of eight categories of property defined by 21 U.S.C. Sec. 881(a). Included in Section 881(a) is a provision, relevant to the case at bar, providing for the forfeiture of illicitly obtained wealth:

**Sec. 881.  Forfeitures**

**(a) Property subject**

The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

In addition, Section 881(b) authorizes the seizure of any property subject to forfeiture under Section 881(a) "upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property." Section 881(b) goes on, however, to provide that seizure may be made without the requisite process if any of four enumerated exceptions pertain:

(1) the seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;

---

**13.** Additionally, the *Angel–Torres* Court considered a fourth factor which modern courts have been incorporating into the traditional balancing test for equitable jurisdiction: whether movants have a special need for immediate possession of the property.

(2) the property subject to seizure has been the subject of a prior judgment in favor of the United States in a criminal injunction or forfeiture proceeding under this subchapter;

(3) the Attorney General has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or

(4) the Attorney has probable cause to believe that the property is subject to civil forfeiture under this chapter.

Further, in the event that a warrantless seizure is made pursuant to either of the latter two exceptions, Section 881(b) provides that formal forfeiture proceedings "shall be instituted promptly" in accordance with the requirements of Section 881(d) of the statute. Although the Government fails to make this point, its position must be that the currency at issue in this case was seized without process under Section 881(b)(4).[14]

Section 881(d) provides that the forfeiture of property seized in accordance with Section 881(b) is to be accomplished through the application of the customs laws, codified at 19 U.S.C. Sec. 1600 *et seq.* Under the customs laws, property valued at up to $100,000 is subject to administrative forfeiture to the United States by the seizing agency without judicial involvement, while property valued at more than $100,000 must be judicially forfeited. 19 U.S.C. Secs. 1607 and 1610; 21 C.F.R. Secs. 1316.75 and 1316.78. To initiate administrative forfeiture proceedings, the seizing agency, in this case the DEA, must publish notice of the seizure and of its intent to forfeit the property once a week for at least three successive weeks in a newspaper of general circulation in the judicial district in which the forfeiture proceeding is brought. 19 U.S.C. Sec. 1607; 21 C.F.R.

Sec. 1316.75. In addition, the agency must give personal written notice of the seizure and information on applicable procedures to any party who appears to have an interest in the seized property. 19 U.S.C. Sec. 1607.

The customs laws also provide the procedures for contesting an administrative forfeiture. Specifically, Section 1608 of the statute provides that any person claiming an interest in the property "may at any time within twenty days from the date of the first publication of the notice of seizure file ... a claim stating his interest therein." In addition, the claimant must simultaneously file a cost bond of $5,000 or ten percent of the value of the property, whichever is less, but not less than $250.[15] The proper filing of a claim and cost bond has the legal effect of halting the administrative proceedings, forcing the seizing agency immediately to refer the matter to the United States Attorney for the institution of judicial forfeiture proceedings. 19 U.S.C. Secs. 1603, 1608; 21 C.F.R. Sec. 1316.-76(b). Formal judicial forfeiture proceedings, if subsequently initiated by the filing of a verified complaint against the property, are conducted pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims. *See also* 19 U.S.C. Sec. 1615. Failure of an interested party to file the requisite claim and bond, however, results in a declaration of forfeiture by the seizing agency and the vesting of title in the United States free and clear of any liens and encumbrances. 19 U.S.C. Sec. 1609; 21 C.F.R. Sec. 1316.77. Such an administrative forfeiture has "the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States." 19 U.S.C. Sec. 1609.

**14.** In the First Circuit, a warrantless seizure under Section 881(b) can be made only when there is contemporaneous probable cause and under exigent circumstances. *United States v. Pappas,* 613 F.2d 324, 330 (1979). Although movants have not challenged the seizure in this case as violating the statutory restrictions imposed under Section 881(b) as interpreted by the Circuit Court of Appeals, I note in passing that a motion for return of property would lie

whether the seizure were in violation of constitutional or statutory restrictions on seizure.

**15.** Congress has made it clear, however, that "the bond requirement is subject to the established authority of the courts to dispense with a required bond where a claimant is unable to post it." S.Rep. No. 98–225, 98th Cong., 1st Sess. 218 (1984), 1984 U.S.Code Cong. & Admin. News, pp. 3182, 3401.

Finally, the customs laws further provide for the filing of petitions for remission or mitigation of forfeiture, whether administrative or judicial, if "incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law" or if there are found "such mitigating circumstances as to justify the remission or mitigation." 19 U.S.C. Sec. 1618. *See also* 21 C.F.R. Sec. 1316.79; 19 C.F.R. Secs. 171.11–171.33. Such petitions, which are not so much an appeal of the validity of the forfeiture as they are a request for a pardon of the property based on the innocence of the petitioner, must be filed within thirty days of the receipt of notice of the property's seizure and are handled by the appropriate administrative agency in accordance with procedures spelled out in customs laws regulations. 21 C.F.R. Secs. 1316.80 and 1316.81. *See also* 1984 U.S.Code Cong. and Admin.News, p. 3376 ("A party who does not have a legal basis for defeating the forfeiture, but who has an equitable basis for relief, may petition ... for remission or mitigation of the forfeiture."); 21 U.S.C. Sec. 881(a)(6) (providing that wealth of innocent owner may not be forfeited).

In sum, the statutory and regulatory provisions outlined above together constitute an elaborate scheme governing civil forfeiture *in rem* which provides generally for the judicial forfeiture of all property subject to forfeiture except in uncontested cases involving property valued at $100,000 or less, and provides further for the return even of forfeit property to an innocent interested party. *See generally* 1984 U.S. Code Cong. and Admin. News, pp. 3374–3381, 3400–3404. In light of this complex scheme, the question before this Court thus becomes whether, given the facts and cir-

cumstances of this case, this civil forfeiture process provides adequately for the adjudication of petitioners' Fourth Amendment claim, thereby requiring the Court to decline to decide, on equitable grounds, the motion for return of property.[16]

## III. ANALYSIS

■ Federal courts that have addressed the problem of overlapping Rule 41(e) and 21 U.S.C. Sec. 881(d) administrative forfeiture proceedings have split over whether to allow the later filed forfeiture action to oust courts from jurisdiction in the pending Rule 41(e) action.[17] Two Circuit Courts of Appeal, the Eighth and Ninth, have resolved the issue by holding quite simply that dismissal of the Rule 41(e) petition is compelled by the subsequent filing of a civil forfeiture proceeding because of the dictates of Fed.R.Crim.P. 54(b)(5), which states in relevant part:

> [The Federal Rules of Criminal Procedure] are not applicable to ... civil forfeiture of property for violation of a statute of the United States....

*See United States v. United States Currency, $83,310.78*, 851 F.2d 1231 (9th Cir. 1988), (relying on reasoning of District of Columbia Circuit in *In re Seizure Warrant*, 830 F.2d 372 (1987), *vacated,* —— U.S. ——, 109 S.Ct. 299, 102 L.Ed.2d 319 (1988) (remanded with instructions to dismiss Rule 41(e) proceedings as moot) in upholding dismissal of Rule 41(e) motion for return of currency filed two days before filing of administrative forfeiture action); *In re Harper*, 835 F.2d 1273 (8th Cir.1988) (Rule 41(e) motion for return of $29,000 seized by DEA agents pursuant to 21 U.S. C. Sec. 881(a)(6) properly dismissed where government subsequently finalized admin-

---

**16.** For the sake of argument, I assume that petitioners have shown a clear violation of their Fourth Amendment rights and the likelihood that they will suffer irreparable harm if the currency is not returned to them. In fact, the hearing on the merits of the Rule 41(e) Motion was continued before argument on these matters was heard and would need to be resumed should the Motion survive the "no adequate remedy at law" prong of the equitable test of this Court's exercise of jurisdiction.

**17.** Recall that Supreme Court dicta, reiterated in the First Circuit, makes clear that petitioners' post-seizure, pre-forfeiture filing of the motion seeking return of the allegedly illegally seized currency is a permissible use of Rule 41(e). See discussion *supra* at pp. 428–29. *But see In re Seizure Warrant*, 830 F.2d 372, 374 n. 1 (D.C.Cir. 1987) (rejecting exercise of Rule 41(e) jurisdiction in absence of related criminal proceeding), *vacated on other grounds,* —— U.S. ——, 109 S.Ct. 299, 102 L.Ed.2d 319 (1988).

istrative forfeiture, making Rule 54(b)(5) applicable and rendering continuing attempt to pursue equitable remedy impermissible collateral attack on completed forfeiture proceeding). The Tenth Circuit, on the other hand, has explicitly rejected the Rule 54(b)(5) analysis in holding that the subsequent commencement of administrative forfeiture proceedings does not automatically oust a trial court from jurisdiction to hear a Rule 41(e) motion, which turns on equitable grounds and may still be heard in a proper case in the trial court's discretion. See *Floyd v. United States*, 860 F.2d 999 (1988) (trial court did not abuse its discretion in ruling on Rule 41(e) motion when administrative forfeiture was instituted after date government specifically targeted and after Rule 41(e) motion proceeded to hearing).

In this Court's view, enlightened by Rule 41(e) jurisprudence in the First Circuit, the Tenth Circuit approach is both more consistent with relevant precedent and more protective of the Fourth Amendment right to be secure against unreasonable searches and seizures, as implemented through the remedy of immediate return of property illegally seized. More specifically, this Court agrees with the Tenth Circuit's refutation of the Eighth and Ninth Circuits' Rule 54(b)(5) argument, which the Tenth Circuit found to reflect an erroneous construction of Rule 54(b)(5). In arguing that Rule 54(b)(5) does not work an automatic ouster of a Rule 41(e) motion upon the later filing of a civil forfeiture action, the Tenth Circuit said:

> Fed.R.Crim.P. 54 describes the courts and proceedings that will be governed by the Federal Rules of Criminal Procedure. Because section 881 forfeitures are civil rather than criminal in nature, (citation omitted), Rule 54(b)(5) provides that criminal rules will not be applicable in civil forfeitures of property. According to the definitions of terms following the rule, a civil action "refers to a civil action in a district court." Fed.R.Crim.P. 54 (Application of Terms). Thus, Rule

54(b)(5) stands for the proposition that the Federal Rules of Criminal Procedure will not govern a judicial civil forfeiture proceeding in district court.

This interpretation of the import of Rule 54(b)(5) is confirmed by the Notes of the Advisory Committee on Rules, which state:

> In subdivision (b)(5) the word "civil" is added before the word "forfeiture" to make clear that the rules *do* apply to criminal forfeiture. This is clearly the intention of Congress. See Senate Report No. 91–617,[18] 91st Cong., 1st Sess., Dec. 16, 1969 at 160: "Subsection (a) provides the remedy of criminal forfeiture. Forfeiture trials are to be governed by the Fed.R.Crim.P. But see Fed.R.Crim.P. 54(b)(5)."

As these Notes make clear, the Congressional intent in framing Rule 54(b)(5) was to ensure that criminal forfeitures are governed by the Federal Rules of Criminal Procedure, civil forfeitures by the Federal Rules of Civil Procedure. *See also* Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d Sec. 1020 (detailing evolving relationship among civil, criminal and admiralty rules in governing forfeiture proceedings). A pre-forfeiture Rule 41(e) motion for return of property is, of course, neither a criminal nor a civil forfeiture proceeding, but is instead a speedy and efficient remedy for unconstitutional governmental takings governed by the equitable principles discussed *supra* at pages 429–30. In addition, as discussed at length *supra*, whatever the limits of the reach of a Rule 41(e) motion, a parallel civil action for return of property, likewise governed by equitable principles, exists and applies to those cases outside the scope of the Rule. I can only repeat that an action for return of property lies whenever property has been seized by federal law enforcement agents in violation of the Fourth Amendment. I turn, therefore, to the equitable analysis required by the First Circuit.

18. Report of the Commission on the Judiciary, United States Senate, to accompany Organized Crime Control Act of 1969. Washington, D.C.: United States Government Printing Office. 1969.

In the case at bar, the government seems to be asserting that petitioners have adequate opportunities to raise their Fourth Amendment claim in the context of the administrative forfeiture proceeding initiated pursuant to 21 U.S.C. Sec. 881(d), either by filing a claim and cost bond under 19 U.S.C. Sec. 1608 and litigating the matter in federal court or by filing, subsequent to the actual forfeiture of the property, a petition for remission or mitigation of the forfeiture pursuant to 19 U.S.C. Sec. 1618. This Court thinks it clear that Section 1618, which commits the determination of remission or mitigation of lawful seizures and forfeitures to agency discretion based on a finding of "such mitigating circumstances as to justify the remission," fails to provide an adequate remedy at law for a Fourth Amendment claim. The right to review of unconstitutional governmental takings is neither discretionary nor ultimately entrusted to federal administrative agencies. See *Floyd*, 860 F.2d at 1004 (Section 1618 cannot be said to provide adequate remedy at law for Fourth Amendment claim); *Wiren v. Eide*, 542 F.2d 757, 761 (9th Cir.1976) (determination of propriety of seizures and forfeitures not properly committed to agency discretion).

The Section 1608 right to elect judicial over administrative forfeiture through the filing of a claim and cost bond, however, clearly makes available to a claimant invoking the remedy an appropriate forum in which to test the legality of the contested seizure. Indeed in litigating the civil forfeiture claim, the parties will necessarily explore the very same issues basic to a Rule 41(e) proceeding, examing in the guise of the government's Section 1615 showing of probable cause for forfeiture both the legality of the initial seizure under 21 U.S. C. Sec. 881(b)(4) and the Rule 41(e) requirement that a claimant be entitled to lawful possession to secure the return of illegally seized property. In the final analysis, because illicit property is, under either Rule 41(e) or civil forfeiture law, forfeitable even if seized in violation of the Fourth Amendment, both the principles of judicial economy and consistency of results mandate that a petitioner's possessory rights be adjudicated in appropriate cases in the civil forfeiture arena. *See, e.g., One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania*, 380 U.S. 693, 696, 85 S.Ct. 1246, 1248, 14 L.Ed.2d 170 (1965) (Fourth Amendment exclusionary rule applicable to civil forfeiture proceedings); *United States v. One 1975 Pontiac Lemans, Vehicle I.D. No. 2F37M56101227*, 621 F.2d 444, 449–451 (1st Cir.1980) (illegality of initial seizure does not defeat government's ultimate entitlement to property as established by untainted evidence; more finely tuned remedy than return of property and its exclusion as evidence, a damages remedy, exists to deter unconstitutional police conduct in cases where government establishes right to possession). To do otherwise would subject the courts to the likelihood of needlessly duplicative litigation, requiring them first to hear Rule 41(e) motions, then forfeiture actions in cases where Rule 41(e) claimants fail to establish their legal entitlement to property subject to forfeiture under 21 U.S. C. Sec. 881(a). In this context, then, this Court holds that the existence of an administrative forfeiture will affect a trial court's discretion to retain Rule 41(e) jurisdiction, and that the decision to retain or refrain from an exercise of that jurisdiction will turn, in keeping with equitable principles, on the facts and circumstances of the case at bar.

In *Floyd*, the Tenth Circuit ruled the district court's exercise of jurisdiction justified by the government's delay in instituting administrative proceedings until after the Rule 41(e) motion had proceeded to hearing, despite its promise to file at an earlier date. In this case, petitioners filed their Rule 41(e) Motion and request for an immediate hearing fifteen days after the allegedly illegal seizure but before the filing of an administrative forfeiture action, as permitted in the First Circuit. The government objected to this Motion nine days later, on January 5, 1989, claiming that administrative forfeiture proceedings had been initiated against the currency and thus the Court had been ousted from jurisdiction to hear the Rule 41(e) Motion. In order to hear argument on the jurisdiction-

al question, the Court set the matter down for hearing on February 14, 1989. In fact, however, the government had not initiated forfeiture proceedings in January as it had claimed, but delayed filing the Notice of Forfeiture until February 8, 1989. *See Floyd*, 860 F.2d at 1008; *United States v. United States Currency in the Amount of $2,857.00*, 754 F.2d 208, 212 (7th Cir.1985) (administrative forfeiture commences with the publication of statutory notice). Thus, despite the government's claims to the contrary, this Court had unquestioned jurisdiction to hear petitioners' Rule 41(e) Motion for a full six weeks, that is until six days before the hearing scheduled on the matter. That the Court stayed its hand on a matter of great constitutional import in good faith reliance on the government's representation that it had initiated civil forfeiture proceedings against the currency is of great consequence to this Court. In challenging the Court's jurisdiction without in fact initiating a forfeiture action, the government risked placing these claimants in exactly the position disapproved of by Judge Coffin, concurring in *Kingsley*, 802 F.2d at 580, that is with "no effective means to challenge the constitutionality of preindictment seizures and no immediate prospect of regaining possession of their property." On the other hand, it is impractical and unfair to the government to expect the DEA to have completed the filing of an administrative forfeiture action as quickly as these claimants moved to file their Rule 41(e) Motion. To rest jurisdiction simply on the timing of the filing of these competing actions is to sanction in practice a pure race to the courthouse. Accordingly, in order to balance the importance that this Court places on safeguarding citizens' Fourth Amendment rights with the practical realities of the civil forfeiture process, I first hold that, in future cases in this Court involving the overlap of a Rule 41(e) motion with a later-filed administrative forfeiture action, the government must object with particularity to claimants' Rule 41(e) motion, outlining the precise steps that have been and are yet to be taken to initiate the forfeiture action and the timetable expected to be followed in taking each step, up to and including the date on which it is anticipated that the forfeiture proceeding will be commenced by the publication of formal notice as specified in 19 U.S.C. Sec. 1607. If the timetable provided to this Court is unreasonable in light of the circumstances of the case at bar, this Court will henceforth proceed to an immediate hearing on the merits of the Rule 41(e) motion. By utilizing this procedure, this Court will ensure that Section 881(d) civil forfeitures are "instituted promptly" as required by statute, while at the same time avoiding a race to the courthouse between Rule 41(e) motions and civil forfeiture actions.

■ Having said this, however, the fact remains that, going into the February 14, 1989 hearing, these particular claimants still possessed a fourteen day window in which to file their claim and cost bond in the administrative proceeding.[19,20] That the Court immediately discontinued the hearing to entertain additional briefs from counsel on the jurisdictional point should have signaled to claimants to act to preserve their rights in the civil forfeiture process. In addition, even if petitioners sat on their rights in reliance on their Rule 41(e) Motion and the matter has proceeded to forfeiture, petitioners even now continue to possess the legal tools to challenge the completed forfeiture proceeding on Fourth Amendment grounds. As the First Circuit explained in *United States v. Mosquera*, 845 F.2d 1122 (1st Cir.1988), while a motion for return of property is not the proper procedural vehicle to collaterally attack a

**19.** Under 19 U.S.C. Sec. 1608, claimants had twenty days from the government's filing of the Notice of Forfeiture on February 8, 1989 to file a claim and cost bond in the forfeiture proceeding. Thus, on February 14, 1989, the day of the Rule 41(e) hearing, claimants still had fourteen day in which to challenge the administrative forfeiture.

**20.** In fact, the government's relatively expeditious filing of the administrative action indicates that claimants' Rule 41(e) Motion served the very purpose envisioned by the Supreme Court in *Eight Thousand Eight Hundred and Fifty Dollars ($8,850)*, that of "trigger[ing] rapid filing of a forfeiture action."

civil forfeiture, a motion for relief from judgment under Fed.R.Civ.P. 60(b) would be an appropriate mechanism for seeking the return of property that had been judicially forfeited, while a civil action for return of property under 28 U.S.C. Sec. 1331 would be the appropriate mechanism for seeking relief from an administrative forfeiture. In short, since these claimants do possess, in the context of the civil forfeiture process, adequate remedies at law for vindicating their Fourth Amendment rights, I must dismiss their Rule 41(e) Motion for return of property on equitable grounds.

So ordered.