Ashok **TYAGI**, Plaintiff,

v.

Vincent **DiSTAZU**, et al., Defendants.

No. 3: CV–92–1759.

United States District Court, M.D. Pennsylvania.

Dec. 28, 1992.

Vanessa M. Daniele, Robert M. Stengel, Anthony J. Mazullo, Jr., Doylestown, PA, for plaintiff.

P. Scott Clarke, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, Susan Forney, Deputy Atty. Gen., Office of Atty. Gen., Harrisburg, PA, for defendants.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Plaintiff Ashok Tyagi alleges in this civil rights action that federal agents violated his constitutional rights by seizing records, cash, and diesel fuel oil from two service stations operated by plaintiff in Pennsylvania. One of plaintiff's stations is located in Mill Hall, Clinton County, Pennsylvania. The other is located in Liverpool, Juniata County, Pennsylvania. Plaintiff has, since February 1, 1992, operated the Mill Hall station through a corporation which he owns, Exit 25 Fuel Stop, Inc. Plaintiff leases the Mill Hall station pursuant to an agreement with Liberty Shell, Inc.

Plaintiff has, since May 1, 1992, operated the Liverpool station through a corporation he owns, Amoco Fuel Stop, Inc. He leases the Liverpool station from Amarbir Singh and Aminderjit Aulakh, and assumed operation of that business from Liverpool Amoco, Inc., by separate agreements dated May 1, 1992.

Liberty Shell, Inc. and Liverpool Amoco, Inc. were targets of an IRS investigation concerning the alleged non-payment of federal diesel fuel taxes which led to the issuance of search and seizure warrants against Liberty Shell, Inc., Liverpool Amoco, Inc. and two hundred other businesses engaged in the sale of diesel fuel in four states, Pennsylvania, Ohio, West Virginia and New Jersey. The warrants were executed on October 20, 1992. At that time, all records and diesel fuel at the plaintiff's two Pennsylvania stations and all cash held

by plaintiff in connection with the two stations were seized by federal agents assisted by the Pennsylvania State Police. No warrant was issued against Tyagi, Exit 25 Fuel Stop, Inc., or Amoco Fuel Stop, Inc. and none was the target of a federal investigation prior to execution of the warrants.

Tyagi alleges in this action that the seizure was a violation of his Constitutional rights. He alleges that his businesses are not tied to Liberty Shell, Inc. or Liverpool Amoco, Inc.; that his only relationship with them is that of lessee and/or business successor; and that all property seized by the agents belonged to him and his corporation, not Liberty Shell, Inc. or Liverpool Amoco, Inc. He contends that the agents had no legal basis for the seizure of his property, and seeks its immediate return.

Plaintiff petitions for a preliminary injunction (Record Document No. 2) directing the immediate return of all property seized from his premises.[1] An evidentiary hearing on plaintiff's motion was held December 21, 1992. Plaintiff testified on his own behalf. The defendants presented no testimony. Although defendants offered to present testimony of federal agent Dick Miller *in camera* outside the presence of counsel for the plaintiff, the court declined the offer. The court found that the testimony proffered was not relevant to the issue immediately before the court.

Based on the testimony presented, we find insufficient evidence that plaintiff will suffer irreparable harm if this court does not order the immediate return of his property. While there was evidence that plaintiff may suffer financial reverses if his cash and fuel are not returned at once, all of the indications are that all the resulting harm is compensable with monetary damages. That does not demonstrate irreparable harm, and therefore, does not support

---

**1.** Plaintiff has also moved to vacate the search and seizure warrants. (Record Document No. 4) That motion is not yet ripe, and will not be addressed in this memorandum.

Although the issue has not yet been briefed, it would seem on the face of it that the issue raised is moot. The warrants have been executed, and vacating them at this juncture would

have no practical effect. What plaintiff really seeks through the request to vacate the warrants is the relief sought in the petition now before the court, the return of his property, not judicial relief invalidating or barring further action on the warrants. It is the court's understanding that no further action on the warrants is contemplated.

issuance of an injunction directing immediate return of the property.

DISCUSSION

The parties disagree on the standard to be applied to plaintiff's motion. Plaintiff contends that since this is a civil, constitutional rights action, he is entitled to an injunction directing the return of his property if he succeeds in proving the criteria applicable to grant of injunctive relief in all civil actions filed in this Circuit. To obtain a preliminary injunction, a civil litigant should demonstrate: 1) a likelihood of success on the merits; 2) that he will suffer irreparable harm if an injunction does not issue; 3) granting the injunction would impose no greater harm upon the defendant than would be imposed upon the plaintiff by the denial of an injunction; and 4) the public interest would be best served by granting the injunction. *Opticians Association of America v. Independent Opticians of America,* 920 F.2d 187, 191–92 (3d Cir.1990).

■ Irreparable harm and likelihood of success on the merits are essential elements. Absent a showing of either one, the petitioner is not entitled to injunctive relief. To prove irreparable harm, the petitioner must show that the harm threatened by the defendant's conduct, in this case by the seizure of petitioner's property, cannot be compensated by money damages. If the threatened harm is compensable with monetary damages, the petitioner has not demonstrated irreparable harm and is not entitled to a preliminary injunction. *Frank's GMC Truck Center, Inc. v. G.M.C.,* 847 F.2d 100, 102–03 (3d Cir.1988) and *Morton v. Beyer,* 822 F.2d 364, 371–72 (3d Cir. 1987).

The defendants [2] contend that the applicable standards are the ones set forth in the Internal Revenue Code (the "Code") under the provisions governing forfeiture of assets used for illegal purposes and the Federal Rules of Criminal Procedure.

Defendants point to section 7302 of the Code, which provides:

It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property. A search warrant may issue as provided in chapter 205 of title 18 of the United States Code and the Federal Rules of Criminal Procedure for the seizure of such property. Nothing in this section shall in any manner limit or affect any criminal or forfeiture provision of the internal revenue laws, or of any other law. The seizure and forfeiture of any property under the provisions of this section and the disposition of such property subsequent to seizure and forfeiture, or the disposition of the proceeds from the sale of such property, shall be in accordance with existing laws or those hereafter in existence relating to seizures, forfeitures, and disposition of property or proceeds, for violation of the internal revenue laws.

26 U.S.C. § 7302.

They rely as well on Rule 41(e) of the Federal Rules of Criminal Procedure, which provides that:

A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is

**2.** Counsel for the federal government states in his brief that he does not represent any of the named individual defendants at this time, but indicates that he does address their conduct in attempting to persuade the Court to deny plaintiff's petition. We refer to the defendants in the plural with the understanding that counsel does not at this time represent all defendants and that there are questions about service of process on certain individual defendants.

filed, it shall be treated also as a motion to suppress under Rule 12.

The courts have construed Rule 41(e) as a remedy which should be exercised sparingly when the movant seeks pre-indictment relief, *Floyd v. United States*, 860 F.2d 999, 1003 (10th Cir.1988), and have stated that equitable considerations govern the decision to grant or deny a pre-indictment motion for the return of property seized by the government. The considerations which are paramount are: 1) whether the claimant has an adequate remedy at law; and 2) whether the claimant can show irreparable harm. *Id.* at 1003–05.

■ The standards advanced by the parties have one key element in common—a requirement that the plaintiff demonstrate that irreparable harm will occur if return of the property is denied. Plaintiff has failed to make such a showing. Testimony at the hearing indicated that all potential harm which will flow from the seizure can be compensated by money damages. Although plaintiff' stations returned to full operation December 2, 1992, plaintiff testified that if the money and fuel are not returned at this time, he faces the prospect of operating only as an independent station, not as a franchise affiliate as before (since he lacks the funds to pay fees required by the franchisor); that he will earn less money operating as an independent, and that it would be easier for him to operate profitably if his assets were returned. All of this comes down to a loss of profits, harm which can be remedied by an award of money damages.

Plaintiff's request for the return of the records seized is on a somewhat different footing. Plaintiff's testimony was that he faces possible penalties and enforcement action by the Pennsylvania Department of Revenue for failure to file returns and remit certain taxes. Plaintiff contends that his timely compliance with Pennsylvania tax laws was made impossible by the federal government's seizure of his records, since he is unable to determine the tax owed without access to the records seized. The records immediately necessary to prepare tax returns were returned to plaintiff during the hearing. Counsel for defendants represented that all records seized, or copies thereof, will be handed over to plaintiff just as soon as the staff in Pittsburgh, where the records are stored, can make copies of all records seized. The return of some records, and counsel's representation that the others will be returned shortly essentially moots plaintiff's request for relief on this issue.

Based on the foregoing, we find that no matter which standard governs, plaintiff cannot prove irreparable harm and therefore is not entitled to the relief sought.

Because plaintiff cannot prevail under either standard, we need not determine at this time which standard governs this action. We note only that it would seem incongruous that an individual whose property has been seized by the government could circumvent the governmental forfeiture procedures and have the claim for return of his property adjudicated under a different standard by filing a civil action. For that reason, we are skeptical of the contention that this action is governed by civil equitable relief standards, but make no ruling on the issue at this time.

For all of these reasons, we will deny plaintiff's petition and decline to order the return of the property seized at this time. We will, however, direct the prompt return of plaintiff's records as counsel for the defendants represented to the court that it was willing to allow plaintiff to access the records.