**UNITED STATES of America**

v.

**Earnest CARTER.**

**Crim. A. No. 87–17–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 4, 1994.

Helen Fahey, U.S. Atty., John Martin, Hillary L. Snyder, Asst. U.S. Attys., Alexandria, VA, for plaintiff.

E. Blair Brown, Alexandria, VA, for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This motion to suppress raises the question, not yet resolved in this circuit, concerning the circumstances under which property seized incident to a lawful arrest may continue to be held by the government after the defendant, released on bond, has requested its return. Because the Court finds (i) that the property at issue here was properly seized incident to a lawful arrest, (ii) that the government had a reasonable continuing investigatory interest in the property, and (iii) that the government did not hold the property for an unreasonably long period of time, the motion to suppress is denied.

### ·I.

The undisputed facts, as set forth in the parties' stipulation of facts, are as follows. On January 14, 1987, at approximately 10:30 p.m., defendant Earnest Carter was arrested at Washington National Airport by Federal Aviation Administration ("FAA") Police Officer Michael Young for theft of personal property. Specifically, Carter had attempted to steal a suitcase that did not belong to him.[1] At the time of Carter's arrest, he had three bags in his possession: (1) A Hartman suitcase, the object of the alleged theft attempt; (2) a black carry-on bag; and (3) a grey "Skyway" suitcase. Also in his possession was a Miami to Washington round trip airline ticket, indicating that he had left Miami on January 14 and was scheduled to return to Miami two days later. The FAA police seized the three bags and the airline ticket.

Carter was asked if he would consent to a search of the black bag and the grey suitcase. He was told that if he did not consent, the police would obtain a search warrant for the two pieces of luggage. Carter declined to consent. At approximately 12:40 a.m. on January 15, 1987, Detective Leach opened the black bag and inventoried its contents. No contraband was found. For reasons that do not appear in the record, Detective Leach did not inventory the grey Skyway suitcase.

On January 15, 1987, Officer Young went to the United States Attorney's Office to prepare the criminal complaint and affidavit charging Carter with larceny. Officer Young did not talk with anyone there about obtaining a search warrant, even though Detective Leach had earlier instructed him to do so.[2] Officer Young then appeared before a United States magistrate judge to swear to the affidavit in support of the complaint, which was then issued that afternoon. That same day, Carter appeared before the magistrate judge for a hearing pursuant to Rule 5, Fed. R.Crim.P. At the conclusion of the Rule 5 hearing, Carter was released on a $2500 unsecured bond.

At approximately 4:00 p.m. on January 15, Detective Leach contacted Officer Young to determine whether a search warrant had been obtained for the grey Skyway suitcase. He was told that the process to obtain a search warrant had not yet begun. At approximately 4:30 p.m. that same day, Carter appeared at Detective Leach's office at the Airport and requested the return of the black bag and grey Skyway suitcase. Detective Leach promptly returned the black bag, which had earlier been searched and inventoried, and asked Carter if he would consent to a search of the grey Skyway suitcase. When Carter declined to consent, Detective Leach refused to return to Carter either the grey Skyway suitcase or the airline ticket.

Shortly after Carter left, Detective Leach called the United States Attorney's Office to

---

1. Defendant does not contest the legality of his arrest. In his defense to the theft charge, however, he asserted that he had mistakenly picked up the suitcase. He further claimed that he had traveled to Washington, D.C. to clarify a case of mistaken identity involving him and the Washington, D.C. police.

2. By this time, the officers had obtained a copy of Carter's criminal history record, which reflected a prior arrest for possession of a controlled substance with the intent to distribute. No information concerning disposition of this charge was then available.

**204**

obtain an application for a search warrant. He was advised that a search warrant could not be obtained until the next day. An Assistant United States Attorney also advised Detective Leach to contact the Drug Enforcement Administration and arrange for a narcotics detector dog to sniff the suitcase. Detective Leach followed this advice and, at approximately noon on January 16th, a dog was allowed to sniff the grey Skyway suitcase. The dog alerted, indicating the presence of narcotics on or in the suitcase. Based on this, as well as the other facts known to the officers,[3] the officers sought a search warrant, which issued at approximately 3:00 p.m. that afternoon. The subsequent search of the bag disclosed that it contained approximately 660 grams of cocaine.

## II.

At the outset it should be noted that the issue presented is not whether there has been an unconstitutional "search." The grey Skyway suitcase was never subjected to a Fourth Amendment search[4] until after the warrant was issued.[5] Rather, the question to be resolved is whether the government unconstitutionally "seized" the grey suitcase when it refused to return the suitcase to Carter upon his request.

To begin with, it is clear that in taking the grey suitcase away from Carter and then refusing to return it to him, the government deprived Carter of dominion over the suitcase. In so doing, the government had "seized" the suitcase within the meaning of the Fourth Amendment. *See Horton v. California*, 496 U.S. 128, 133, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112 (1990) ("a seizure deprives the individual of dominion over his or her person or property"). But

only "unreasonable ... seizures" run afoul of the Constitution. U.S. CONST. amend. IV. And in this regard, it is clear that officers are permitted to seize items in the possession or immediate control of an arrestee at the time of a lawful arrest. *See, e.g., Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *United States v. Lehmann*, 798 F.2d 692 (4th Cir.1986). Not so clear, however, is when, after a seizure incident to a lawful arrest, the government must return the seized property to the arrestee.

Under Rule 41(e), Fed.R.Crim.P.,

[a] person aggrieved by ... deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property.

Although Carter did not formally seek the return of his suitcase under Rule 41(e), judicial analyses of Rule 41(e) motions provide guidance in determining the principles to apply in determining whether the government, in the circumstances at bar, could lawfully refuse to return the suitcase.

From Rule 41(e) cases, several general principles emerge. First, while the government is "clearly permitted to seize evidence for use in investigations and trial ... the government may not by exercising its power to seize effect a *de facto* forfeiture by retaining the property seized indefinitely." *United States v. Premises Known as 608 Taylor Ave., Apartment 302*, 584 F.2d 1297, 1302 (3d Cir.1978) (citations omitted). Instead, courts must balance the government's interests in holding the property against the owner's right to use the property. *Id.; see also Sovereign News Co. v. United States*, 690 F.2d 569, 577 (6th Cir.1982), *cert. denied*,

---

**3.** These facts included (i) Carter's previous arrest for possession of a controlled substance with the intent to distribute, (ii) Carter's possession of a round trip ticket from Miami, a known source city for narcotics, with only a two-day stop-over, and (iii) the fact that the grey suitcase was securely encircled with several pieces of tape, even though it was equipped with properly functioning zippers. The tape aroused the officers' suspicions because it suggested that Carter was especially careful to ensure that the suitcase was not and could not be opened.

**4.** The dog sniff is not a Fourth Amendment "search." *See United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983).

**5.** This fact distinguishes the instant case from "inventory search" cases, such as *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). Had cocaine been found in the black carry-on bag in the course of the inventory search, then the *Wells* requirement for a policy or practice governing inventory searches would have come into play.

464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). In striking this balance, courts need not order the return of lawfully seized property where the government has a "continuing interest" in the property. And, in this regard, an ongoing criminal investigation is an appropriate "continuing interest." *Sovereign News*, 690 F.2d at 577. Even then, the government is not permitted to hold property for an "unreasonable time" without taking some action with regard to the property. *Id.; Premises Known as 608 Taylor Ave.*, 584 F.2d at 1302.

■■■ These principles, applied to the circumstances at bar, point convincingly to the conclusion that no unreasonable seizure violative of the Fourth Amendment occurred when the government refused Carter's request for the return of the suitcase. To begin with, it is clear that the government had a "continuing interest" in the suitcase, as the effort to obtain a search warrant reflects that there was an ongoing criminal investigation into whether Carter was a drug trafficker.[6] Nor did the government hold the suitcase for an unreasonable time. The total elapsed time between the time of the initial seizure of the suitcase and the issuance of the search warrant was less than 48 hours. Given the facts known to the officers and the nature of the crime involved, this was not an unreasonable time. In sum, the government is not required to return the property lawfully seized on a defendant's request where, as here, the government retains the property for a reasonable amount of time, during which it pursues a criminal investigation involving the property with reasonable expedition.

Even assuming the instant seizure violated the Fourth Amendment, the cocaine found in the suitcase is nonetheless admissible under the "good faith exception" set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and its progeny. *United States v. White*, 890 F.2d 1413 (8th Cir.1989), *cert. denied*, 498 U.S. 825, 111 S.Ct. 77, 112 L.Ed.2d 50 (1990), a case involving essentially similar facts to those at issue here, illustrates this point. In *White*, officers working at an airport became suspicious of White, whom they believed exhibited drug courier profile characteristics. The officers approached White and stopped him, an action which escalated into a *Terry*-type investigative stop, requiring "reasonable, articulable suspicion to survive Fourth Amendment scrutiny." *White*, 890 F.2d at 1416 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). While White was detained, a narcotics detection dog, brought to sniff his bags, "alerted" on White's carry-on bag. Based on this evidence, the officers obtained a warrant to search the carry-on bag. The bag was then searched and cocaine was found. White moved to suppress the fruits of this search, asserting that the officers detained him and his luggage without the required reasonable, articulable suspicion.

In affirming the admissibility of the cocaine, the Eighth Circuit held first that the officers, relying on the drug courier profile, lacked the "reasonable, articulable suspicion" required to justify a *Terry* stop. Therefore, the officers' detention of White and his bags violated the Fourth Amendment. Nevertheless, the Eighth Circuit went on to find the evidence admissible, citing the *Leon* rule that

> evidence seized pursuant to a warrant, even if in fact obtained in violation of the Fourth Amendment, is not subject to the exclusionary rule if an objectively reasonable officer could have believed the seizure valid.

*White*, 890 F.2d at 1419.

■■■ As in *White*, the officers here had a reasonable, good faith basis for believing that

6. See note 3, *supra*, for the list of facts creating the officers' suspicions that Carter was a drug trafficker.

Carter contends that the government may refuse to return property in the circumstances at bar only if the ongoing criminal investigation, *i.e.*, the "continuing interest," is directly related to the crime for which an arrestee is arrested. This formulation of the rule is too narrow. One need only consider an alien, arrested at an airport for trying to enter the country with a counterfeit passport, who is suspected of carrying a bomb. Surely it would make no sense to require the police, having seized the alien's bags incident to a lawful arrest for possession of illegal immigration documents, to return the bag immediately upon the arrestee's request, if, as here, a criminal investigation were underway and being pursued with reasonable expedition. Of course, there, as here, the alien's bags, absent a valid inventory search policy, could not be opened without probable cause and a search warrant.

the seizure and retention of the suitcase was proper. This belief was based on their knowledge that officers are allowed to seize property in the possession of arrestees at the time of their arrest. Furthermore, because the arrest and seizure had taken place less than 24 hours before Carter's request for the return of the property, it was reasonable for the officers to believe that they had not held the property an unreasonable amount of time. Consequently, because the cocaine in Carter's suitcase was found pursuant to a valid search warrant and because the officers reasonably believed that their continued seizure of the suitcase was valid, the cocaine falls within the good faith exception to the exclusionary rule. Accordingly, Carter's motion to suppress is denied.[7]

---

**7.** Following denial of Carter's motion to suppress on August 1, 1994, Carter pled guilty to one count of possession of a controlled substance with intent to distribute and one count of failure to appear before the United States magistrate judge. His plea to the drug trafficking charge was conditioned on the right to appeal the denial of the motion to suppress. The government elected to dismiss the theft charge.