UNITED STATES of America

v.

Harry C. LAMPLUGH, Theresa Lamplugh and John Lamplugh, Defendants.

Nos. 3:Misc.–94–88–01, 4:CR–95–169.

United States District Court, M.D. Pennsylvania.

March 4, 1997.

Wayne P. Samuelson, Asst. U.S. Attorney, Williamsport, PA, for U.S.

Robert Sanders, Sara Kopecki, Washington, DC, for defendants.

## MEMORANDUM

VANASKIE, District Judge.

The defendants, Harry C. Lamplugh, Theresa L. Lamplugh and John Lamplugh, are currently involved in a criminal prosecution for alleged violations of various firearm and weapon possession and distribution laws. The defendants are family members. Harry C. Lamplugh and Theresa L. Lamplugh are husband and wife, while John Lamplugh is their son. The defendants made a motion under Federal Rule of Criminal Procedure 41(e) for the return of property seized by the government which is not evidence of a charged offense or the fruit or instrumentality of a charged offense. (Misc.Dkt.Entry 16.) As to the currency, the government has failed to justify its continued retention of defendants' money. In this regard, any evidentiary value of the currency itself may be preserved by photographing it, recording the serial numbers, and having defendants or their agents sign a receipt acknowledging return of the cash.[1] As to the records seized nearly three years ago, the government will be required to show cause why it should not be required to either return the originals or provide defendants with photocopies of the records at the government's expense.[2]

## I. BACKGROUND

After an initial investigation, the government applied to United States Magistrate Judge Thomas M. Blewitt for search warrants for two premises allegedly owned by Harry Lamplugh. On May 25, 1994, Alcohol, Tobacco & Firearms (ATF) agents and Internal Revenue Service (IRS) agents executed search warrants for the premises of the defendants. As a result of these searches, sixty-one firearms were recovered, along with business records and a substantial amount of currency.

On September 14, 1994, only a few months after the search, the defendants made a motion for return of their property. (Misc.Dkt.Entry 7.) On August 4, 1995, I denied the defendants' request for the return of their property because the government had obtained an indictment against the defendants. (Misc.Dkt.Entry 13.) On May 20, 1996, the defendants renewed their motion for the return of their property. (Misc.Dkt.Entry 16.) At a status conference held on February 5, 1997, I inquired into the reasonableness of allowing the government to continue to possess the defendants' financial records and currency given that such records and currency were not related to the charges for firearms-related violations. The government indicated that it intended to bring tax evasion charges against Harry Lamplugh and Theresa Lamplugh which would demonstrate the evidentiary value of the defendants' financial records and currency. As of the date of this decision, no tax-related charges have been brought against any of the defendants.[3]

## II. DISCUSSION

The defendants seek return of their property pursuant to Federal Rule of Criminal

---

1. According to the search inventory provided by the government, federal agents seized $10,130.00 from the residence of Harry and Theresa Lamplugh. (Mot. for Return of Prop. (MI Dkt.Entry 7) Exhibit A.) Theresa Lamplugh acknowledges that this money was seized, but also claims that an additional $10,500.00 was taken from the premises by federal agents. (Id. Exhibit D.) The defendants will be afforded the opportunity to present evidence as to the actual amount of currency seized by the federal agents.

2. The defendants have essentially requested a show cause hearing in their brief in support of their motion for return of property:

   The defendants request a hearing to reach the first step; to distinguish between that which the government is keeping as evidence of a charged crime and that which is unrelated to any charged offense. Once that has been decided, the Court may grant the motion returning the property without prejudice to the government. The Court can impose reasonable conditions to protect access and use of the property by the government in subsequent proceedings. With regard to records, the government can retain copies of the originals for use as evidence. As to the currency, the government can photograph and record serial numbers. With other tangible property, such as firearms and accessories, the government can photograph and use testimony to ensure any evidentiary value.

   (Def's Brf. in Support (Dkt.Entry 62) at 12.)

3. In a status report filed on February 26, 1997, the government indicated that it intends to present evidence to a grand jury on possible income tax violations prior to an evidentiary hearing that is to be held on other issues commencing May 27, 1997. (Dkt.Entry 93.)

Procedure 41(e). In 1989, Rule 41(e) was amended to allow "a person aggrieved ... by the deprivation of property" to seek to require the government to return the property. *See Virgin Islands v. Edwards,* 903 F.2d 267, 273 (3d Cir.1990). In addressing the standard to be applied in determining whether to order a return of property, the Third Circuit has stated:

> The rule in its earlier version did not contain any suggestion of the standard to govern the determination whether the property should be returned to the movant, and the amendment did not speak to that issue. The Advisory Committee Notes to the 1989 amendment suggest merely that "reasonableness under all circumstances must be the test when a person seeks to obtain the return of property," a standard comparable to that which we used in [*United States v. Premises Known as 608 Taylor Ave.,* 584 F.2d 1297 (3d Cir.1978)].

*Id.* at 273 (citations omitted). Given that the Third Circuit has held that the Rule 41(e) standard and the *608 Taylor Avenue* standard are comparable, a consideration of *608 Taylor Avenue* is appropriate.

In *608 Taylor Avenue,* the government searched the defendant's premises for gambling contraband. In the course of the search, the government seized approximately $12,000 in currency. Prior to any criminal indictment or forfeiture proceedings being brought against the defendant, he moved for the return of the currency. *608 Taylor Ave.,* 584 F.2d at 1299. The Third Circuit recognized that the government has the right to seize evidence, but cautioned that the government could not "effect a de facto forfeiture by retaining the property seized indefinitely." *Id.* at 1302. The Third Circuit held:

> the district court under its powers to supervise law enforcement officials and the United States Attorney within its jurisdic-

tion may require the return of property held solely as evidence if the government has unreasonably delayed in bringing prosecution. In making its determination, the court should carefully balance the citizen's interest in the use of his property against the wide-ranging governmental interests in law enforcement.

*Id.* Further, in determining whether a delay was reasonable, the Third Circuit noted that the need to retain the currency was not reasonable if the government's interest could be satisfied through alternative means. *Id.* at 1304; *see also* 1989 Committee Note Fed. R.Crim.P. 41(e) ("In many instances documents and records that are relevant to ongoing or contemplated criminal investigations and prosecutions may be returned to their owner as long as the government preserves a copy for future use.") [4]

■ Although *608 Taylor Avenue* was decided prior to the 1989 amendment of Rule 41(e), the reasonableness standard appears identical. Simply put, the Third Circuit and Rule 41(e) require that a district court balance the interests of the parties to determine the reasonableness of the government's continued retention of seized property. *See also United States v. Martinson,* 809 F.2d 1364, 1370 (9th Cir.1987) (finding that the government must return property once its need for it has ended); *United States v. Frank,* 763 F.2d 551, 552 (3d Cir.1985) (stating that the IRS could not keep movant's money without a need or justification); *United States v. Wright,* 610 F.2d 930, 939 (D.C.Cir.1979) (holding that $2,100 in currency seized at drug raid had to be returned unless it was stolen or contraband); *United States v. Palmer,* 565 F.2d 1063, 1064 (9th Cir.1977) (finding that $763 had to be returned to movant after his conviction for bank robbery because the government could not demonstrate a need for the money); *United States v. Wilson,* 540 F.2d 1100, 1104 (D.C.Cir.1976)

---

4. The Third Circuit, of course, explicitly recognized that retention of property is reasonable so long as the government has a "continuing interest," such as forfeiture or a tax lien. *Id.* at 1303. In terms of forfeiture, the Third Circuit warned that due process requires that any forfeiture proceeding must be brought without unreasonable delay. *Id.* In any event, neither of these argu-

ments pertains to the defendants. There has been no assertion that the currency being held is subject to forfeiture. And although the government has represented that tax evasion charges will be brought against Harry and Theresa Lamplugh, there is not at this time a tax lien which would allow the government to continue to retain the defendants' currency.

(requiring the government to return $2,725 to the movant even though the government contended that the money was subject to forfeiture); *Shea v. Gabriel*, 520 F.2d 879, 882 (1st Cir.1975) (noting that a court should balance the government's need against the movant's right of possession); *United States v. Carter*, 859 F.Supp. 202, 205 (E.D.Va.1994) (holding that even with a continuing investigation, the government cannot continue to hold a person's property for an unreasonable time without taking some action); *Matter of Search Warrant for Premises Known as Encore House*, 100 F.R.D. 700, 701 (S.D.N.Y. 1983) (finding that government had to return $1 million in checks seized in mail fraud investigation as the government had unreasonably held the checks for a four month period without bringing an indictment).

■ Admittedly, some courts have held that a motion for the return of property prior to an indictment requires the movant to demonstrate that (1) there is no adequate remedy at law, and (2) the movant will suffer irreparable harm if the property is not returned. *Black Hills Inst. of Geological Research v. Department of Justice*, 967 F.2d 1237, 1239 (8th Cir.1992); *Floyd v. United States*, 860 F.2d 999, 1003 (10th Cir.1988); *Mr. Lucky Messenger Serv., Inc. v. United States*, 587 F.2d 15, 16 (7th Cir.1978); *Matter of 636 South 66th Terrace*, 835 F.Supp. 1304, 1306 (D.Kan.1993); *Tyagi v. DiStazu*, 809 F.Supp. 10, 13 (M.D.Pa.1992). Although *Tyagi* is a decision of this court, I find it unpersuasive. In *Tyagi*, Judge McClure never considered the Third Circuit's holding in *608 Taylor Avenue* or its adoption in *Edwards*. Even though *608 Taylor Avenue* involved a pre-indictment claim for the return of property, the Third Circuit never considered the application of equitable injunctive principles. Further, there is nothing in the 1989 Com-

mittee Notes to Rule 41(e) which would suggest that a court must find that (1) there is no adequate remedy at law, and (2) that the movant would be irreparably harmed if the property was not returned. Given the reasonableness standard enunciated by the Third Circuit and the Committee Notes, I will not require the defendants to demonstrate that they will suffer irreparable injury if their property is not returned.[5]

■ Applying the reasonableness test to the facts of this case, it appears that the government must be ordered to return defendants' currency. First, the government has retained the currency for almost three years. No charges have been filed against the defendants which would create evidentiary value in terms of the currency itself. Although the government contends that it will seek tax evasion charges, the government has been making this assertion from the moment it seized the property. In fact, one of the purposes of the initial search warrants was to obtain information in relation to potential tax violations. IRS agents also assisted in the search of the defendants' property and took relevant business documents. Despite having sole custody of the defendants' currency, the government has yet to obtain an indictment against the defendants for income tax violations. In light of the protracted delay, allowing the government to continue in its possession of the defendants' cash is unreasonable.

Second, the government has also failed to pursue any forfeiture action in regard to the currency. Although the government represents that it intends to bring tax evasion charges, there has been no indication that the defendants' currency held by the government is subject to forfeiture. Even if such funds were subject to forfeiture, the govern-

5. Even if I were to hold that the defendants must show an irreparable injury, such a showing has been made in this case. As the Seventh Circuit recognized:

> Whenever the government seizes a significant amount of money and withholds it for an unreasonable length of time without bringing charges and without offering evidence to justify its continued withholding and without any indication as to when if ever charges will be filed, the plaintiff suffers irreparable harm.

*Mr. Lucky Messenger Serv., Inc.*, 587 F.2d at 17. In this case, the government has refused to return over ten thousand dollars to the defendants. There has been no forfeiture proceeding instituted with regard to the money. There has been no charges brought in relation to the money. Further, there is no tax lien or other government interest which would authorize the government to continue to hold onto the money. I agree with the Seventh Circuit in holding that such circumstances constitute irreparable harm.

ment has a duty to bring such forfeiture proceedings within a reasonable time. Considering that the government has been in possession of the defendants' currency for nearly three years, it appears that allowing the government to continue its possession would be unreasonable.

Third, the government has failed to demonstrate any continuing interest in the currency that cannot be safeguarded by alternative means. There is no tax lien which would authorize the government to continue its possession of the defendants' currency. Although the government contends that the currency will be evidence in its tax evasion case, it is difficult to understand how the government's interest would not be equally served by photographing the evidence and recording serial numbers. The important fact is that the government contends it seized a substantial amount of cash when it searched defendants' premises. Presumably, the government will argue that the existence of a large amount of currency will show that defendants had income which they failed to report. The existence of cash can be documented by photographing it and recording the serial numbers. Moreover, defendants could be required to acknowledge return of the cash by executing a receipt or having an agent, such as their lawyer, execute a receipt. The fact of discovery of the cash at defendants' residence would thus be memorialized in an admissible form.

█ As to the financial records themselves, original documents are obviously preferable from an evidentiary standpoint. But the owners of the records should not be deprived of the content of these documents unreasonably. In this case, the government has had these records for almost three years. Under these circumstances, the government should be required to show cause why it should not be required to return the originals or provide photocopies of the records to the defendants at the government's expense.

### III. CONCLUSION

The government has seized and maintained sole possession of defendants' currency and financial records for nearly three years. Throughout this lengthy possession, the gov-

ernment has asserted that the currency and financial records were necessary for the government's investigation into potential acts of tax evasion. Recently, the government indicated that it is finally ready to submit evidence of the defendants' alleged tax evasion before a grand jury.

In any event, the Third Circuit and the dictates of the Committee Notes to Rule 41(e) require that a court apply a reasonableness standard to determine whether the government should be ordered to return any seized property. In this case, the government has retained the defendants' property, including financial records and over ten thousand dollars in currency, without filing any charges or forfeiture proceedings in relation to this property. The government has not demonstrated an evidentiary interest in the currency which could not be preserved in an alternate way. The government could easily photograph the currency and record its serial numbers. Further, the government could require the defendants, or an agent of the defendants, to sign a receipt when the currency is released. Because there is no government interest which would allow the government to continue in possession of the currency, the government will be ordered to return the seized currency to the defendants within ten (10) days of this Order. As to the financial documents, it is not clear that the government has reasonably retained possession of these seized documents for nearly three years. Therefore, the government will be ordered to show cause as to why the government should not be ordered to either return the originals or provide photocopies of the documents to the defendants at the government's expense. An appropriate Order is attached.