**Jim FLOYD, Petitioner–Appellee,**

v.

**UNITED STATES of America,
˙Respondent–Appellant.**

No. 88–1065.

United States Court of Appeals,
Tenth Circuit.

Nov. 7, 1988.

---

Jeralyn E. Merritt, Denver, Colo., for petitioner-appellee.

Stephen C. Peters, Asst. U.S. Atty. (Michael J. Norton, U.S. Atty., with him on the brief), Denver, Colo., for respondent-appellant.

Before ANDERSON and BALDOCK, Circuit Judges, and PARKER, District Judge.[*]

BALDOCK, Circuit Judge.

This is an appeal from a district court order requiring the government to return to petitioner-appellee Jim Floyd (Floyd) $41,440 in currency. Our jurisdiction arises from 28 U.S.C. § 1291.

## I. Background

On September 12, 1987, Floyd proceeded through the passenger screening area at Denver's Stapleton International Airport. When private security agents were unable to mechanically screen the contents of a duffel bag carried by Floyd, an agent asked and received Floyd's permission to manually search the bag. Inside the bag the agent found large amounts of U.S. currency wrapped in envelopes. The agent then replaced the contents of the bag, allowed Floyd to proceed, and notified his supervisor of the occurrence. The supervisor summoned the Denver police.

[*] The Honorable James A. Parker, United States District Judge for the District of New Mexico, sitting by designation.

Denver police officers located Floyd who voluntarily accompanied them to an airport security office. Without his permission, Floyd's bag was searched again. Subsequently, a Denver police technician arrived with a dog trained to detect the presence of drugs. Floyd then disclaimed ownership of the bag and left. The dog reacted positively to the presence of drugs, and the currency was turned over to federal agents from the Mountain States Drug Task Force.

On September 18, 1987, Floyd filed a motion for return of the currency pursuant to Fed.R.Crim.P. 41(e).[1] The government's motion to dismiss was denied, and the case proceeded to a November 23, 1987, hearing. On December 2, 1987, the government published notice indicating that it had begun administrative forfeiture proceedings on the currency as provided for by 21 U.S.C. § 881.[2] On December 30, 1987, the district court entered its memorandum opinion and order which granted the Rule 41(e) motion upon a finding that Floyd's property had been illegally seized.

On appeal, the government argues that (1) the trial court had no jurisdiction to hear the Rule 41(e) motion, (2) Floyd lacked standing to assert the fourth amendment claim and (3) the seizure of the currency did not violate the fourth amendment. We reverse and remand.

## II. Jurisdiction

The government asserts four grounds for reversal of the trial court's exercise of jurisdiction. According to the government, a Rule 41(e) motion cannot support jurisdiction for a return of property when unrelated to a criminal action. Second, the government argues that a court's Rule 41(e) jurisdiction must cease when the government commences a civil forfeiture proceeding. Third, the government contends that federal jurisdiction fails under Rule 41(e) as the search was conducted solely by private security agents and municipal police. Finally, the government claims that apart from Rule 41(e) jurisdiction, the trial court abused its discretion by asserting equitable jurisdiction over the suit to return property. Because of its importance, we address this last issue first.

### A.

The trial court held that its jurisdiction was proper "based upon both Rule 41(e) and the general equitable jurisdiction of the federal courts." *Floyd v. United States*, 677 F.Supp. 1083, 1087 (D.Colo. 1987). The government attacks both bases. Because these are matters of first impression in the Tenth Circuit, we find it necessary to clarify the nature of Rule 41(e) jurisdiction.

The circuits that have considered the issue have generally concluded that a motion for return of property, whether based on Rule 41(e) or a court's general equitable jurisdiction, is governed by equitable princi-

1. Rule 41(e) provides in full:

(e) **Motion for Return of Property.** A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

2. Section 881 provides in pertinent part:

(a) **Subject property.** The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . . .

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this title, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this title, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

ples. *In re Harper*, 835 F.2d 1273, 1274 (8th Cir.1988); *United States v. Martinson*, 809 F.2d 1364, 1367 (9th Cir.1987); *Angel–Torres v. United States*, 712 F.2d 717, 719–20 (1st Cir.1983); *Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir.1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); *Smith v. Katzenbach*, 351 F.2d 810, 814 (D.C.Cir.1965). We hold that a trial court's decision to grant jurisdiction over a Rule 41(e) motion for return of property should be governed by equitable principles.

Rule 41(e) jurisdiction should be exercised with caution and restraint. *E.g., Hunsucker*, 497 F.2d at 34. A Rule 41(e) motion should be dismissed if the claimant has an adequate remedy at law or cannot show irreparable injury. 3 C. Wright, Federal Practice and Procedure § 673 (2d ed. 1982).

The trial court held specifically that a Rule 41(e) motion did not require a showing of irreparable harm, noting that the text of the rule made no mention of it. *Floyd*, 677 F.Supp. at 1087 n. 2. We disagree. We join with those courts cited above holding that Rule 41(e), with regard to jurisdiction, is an embodiment of equitable principles rather than a basis for jurisdiction strictly by its terms. Further, the Supreme Court has noted that irreparable injury is required to support a motion to suppress under Rule 41(e) when entertained by the court on equitable grounds in advance of any proceedings. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 359–60, 97 S.Ct. 619, 632, 50 L.Ed.2d 530 (1977) (citing *Hunsucker*, 497 F.2d at 34). We therefore reverse the trial court and hold that a

showing of irreparable harm is necessary for Rule 41(e) jurisdiction.

■ We are aware that in addition to showing irreparable harm and an inadequate remedy at law, a number of courts require the claimant to show that the seizure involved a callous disregard for his constitutional rights. *See, e.g., Hunsucker*, 497 F.2d at 34. The equitable nature of Rule 41(e) jurisdiction is well established, and we have no difficulty reading equitable constraints into the text of the statute for that purpose. Rule 41(e) deals specifically, however, with the conduct that will trigger relief. It requires a showing of an illegal seizure, not a callous disregard of that legality. It would be anomalous to impose as a jurisdictional hurdle a requirement more restrictive than the substantive harm specifically sought to be remedied by Rule 41(e). Having determined the equitable nature of 41(e) jurisdiction, we now turn to the analysis of the underlying factors.

### 1. Adequate Remedies at Law

The government asserts that Floyd failed to pursue four available remedies at law, including the filing of (1) a claim and cost bond under 19 U.S.C. § 1608, (2) a petition for remission or mitigation of the forfeiture pursuant to 19 U.S.C. § 1618, (3) a petition in the United States Claims Court under 28 U.S.C. § 1491(a)(1) or (4) a state tort or replevin action. We review these remedies respectively.

■ (1) The government contends that Floyd had an adequate remedy at law according to 19 U.S.C. § 1608.[3] The relevant statutes[4] provide for two potential stages

---

**3.** Section 1608 provides:

Any person claiming such vessel, vehicle, aircraft, merchandise, or baggage may at any time within twenty days from the date of the first publication of the notice of seizure file with the appropriate customs officer a claim stating his interest therein. Upon the filing of such claim, and the giving of a bond to the United States in the penal sum of $5,000 or 10 percent of the value of the claimed property, whichever is lower, but not less than $250, with sureties to be approved by such customs officer, conditioned that in case of condemnation of the articles so claimed the obligor shall pay all the costs and expenses of the

proceedings to obtain such condemnation, such customs officer shall transmit such claim and bond, with a duplicate list and description of the articles seized, to the United States attorney for the district in which seizure was made, who shall proceed to a condemnation of the merchandise or other property in the manner prescribed by law.

**4.** Forfeiture proceedings arising out of drug offenses are governed by the same statutory provisions, 19 U.S.C. § 1595 *et seq.*, as apply to customs forfeitures. 21 U.S.C. § 881(d); *Bramble v. Richardson*, 498 F.2d 968, 969 (10th Cir.),

in a forfeiture situation: first, an administrative process allowing for summary forfeiture, and second, a judicial forfeiture proceeding. A claimant may invoke § 1608 to end the administrative forfeiture and force the institution of judicial proceedings. The legality of a seizure may be tested in the judicial forfeiture. *See One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 696, 85 S.Ct. 1246, 1248, 14 L.Ed.2d 170 (1965) (fourth amendment exclusionary rule applies to forfeiture proceedings).

The process works as follows. If the value of a seized article does not exceed $100,000, the appropriate customs officer is required to publish for three successive weeks a notice of seizure and intent to forfeit the property. 19 U.S.C. § 1607. After the first publication of notice, a claimant has twenty days to file a claim and cost bond. 19 U.S.C. § 1608. If no such filing occurs, the property is administratively forfeited at the end of the twenty days. 19 U.S.C. § 1609. A timely filing, however, stops the administrative forfeiture, 21 C.F.R. § 1316.76(b), and the matter is then transferred to the appropriate United States attorney for the institution of judicial forfeiture proceedings. 21 C.F.R. § 1316.78.

The § 1608 remedy, brought about by the filing of a claim and cost bond, is not available to the claimant until statutory notice is published. After the September 18, 1987, filing of this Rule 41(e) motion, the government indicated that formal notice would be published "on or about October 21, 1987." *See* Affidavit of Special Agent Ann Canty, rec. vol. I at 2A. It was not so published, and the Rule 41(e) motion proceeded to a hearing on November 23, 1987. Notice was published on December 2, 1987, and the trial court entered its order on December 30, 1987. Floyd had no remedy pursuant to § 1608 at the time of the Rule 41(e) hearing, and given the government's delay, the trial court did not abuse

its discretion by retaining jurisdiction after the publication of administrative notice.

■ We do not foreclose the possibility that a trial court may in its discretion properly dismiss a Rule 41(e) motion even after a Rule 41(e) hearing. The inquiry should always be equitable and not mechanical, and thus resolution should not turn on a pure race between the parties to file or publish notice.[5] In this case, however, where the government failed to publish notice on or soon after a date it specifically targeted, and where the Rule 41(e) motion proceeded to a hearing, we find no abuse of discretion.

■ (2) The government asserts that 19 U.S.C. § 1618 provided Floyd with an adequate remedy at law. Section 1618 allows an interested party to file a petition for remission or mitigation of a seizure. Section 1618 permits the Secretary of the Treasury to remit or mitigate a forfeiture if he finds that it "was incurred without wilful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such ... forfeiture." 19 U.S.C. § 1618. The government's argument is not compelling.

Section 1618 provides specific grounds for relief for claimants lacking wilful negligence or the intent to defraud the revenue or violate the law. The Secretary's discretion to consider other mitigating circumstances that may justify remission or mitigation is equitable in nature. Thus, § 1618 cannot be said to provide an adequate remedy at law for a fourth amendment claim. Additionally, we have found no § 1618 cases dealing with the legality of a seizure, and one court has stated that § 1618 is not appropriate for testing a seizure's legality. *Wiren v. Eide,* 542 F.2d 757, 761 (9th Cir. 1976) (remission or mitigation of lawful seizures and forfeitures properly commit-

cert. denied, 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974).

5. While jurisdiction should not depend on a pure race, the Supreme Court has noted that a

claimant may file a Rule 41(e) motion in order "to trigger rapid filing of a forfeiture action...." *United States v. $8,850,* 461 U.S. 555, 569, 103 S.Ct. 2005, 2014, 76 L.Ed.2d 143 (1983).

ted to agency discretion; determination of the propriety of the seizures and forfeitures themselves is not).

■ (3) The government argues that Floyd could have pursued a remedy in the United States Claims Court under 28 U.S.C. § 1491(a)(1). This Tucker Act provision grants the claims court exclusive jurisdiction to hear actions seeking monetary damages from the United States for constitutional violations. 28 U.S.C. § 1491(a)(1); *Rogers v. Ink,* 766 F.2d 430, 433 (10th Cir.1985). The instant case, however, is a suit for return of property, not monetary damages.

We have indicated that one may not avoid the claims court jurisdiction by framing as equitable a claim essentially seeking money from the United States. *New Mexico v. Regan,* 745 F.2d 1318, 1322 (10th Cir.1984), *cert. denied,* 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985). In cases where claims court jurisdiction attached, however, if a plaintiff was not strictly seeking money damages, he was at least trying to enforce an alleged government debt or payment. *See Jicarilla Apache Tribe v. Hodel,* 821 F.2d 537, 540 (10th Cir.1987) (plaintiff sought rescission and refund of bonus and rental payments paid to the government); *Rogers,* 766 F.2d at 434 (although prayer sought declaratory relief, plaintiffs asked for funds allegedly due from the United States under a federal program); *Regan,* 745 F.2d at 1322 (claim for past royalties and prejudgment interest allegedly due under the Mineral Act); *Amalgamated Sugar Co. v. Bergland,* 664 F.2d 818, 823–24 (10th Cir.1981) (plaintiff seeking payments under federal loan program although petition framed as asking for declaration of eligibility for program).

Here, there is no claim for damages nor an asserted government debt. This is a suit for the return of property that happens to be money. Thus, the Rule 41(e) motion is not within the exclusive jurisdiction of the claims court.

■ (4) The government's final assertion that Floyd should have pursued state law remedies is without merit. Even if Floyd may seek damages from the state or municipal officers who conducted the search, such a claim is wholly different from and thus not prerequisite to a motion for return of property held by the federal government. The government claims that Floyd could have invoked a Colorado replevin procedure which provides for the return of property "that is by statute exempt from seizure." Colo.R.Civ.P. 104(b)(4). Even assuming that this procedure would apply to property in federal custody, the government offers no statutory basis for exempting this currency from seizure. We conclude that Floyd had no adequate remedy at law which would require dismissal of his Rule 41(e) motion.

## 2. Irreparable Harm

■ Because the trial court held as a matter of law that there was no need to show irreparable harm, there were no findings of fact relevant to that issue. We therefore remand this issue to the trial court for further proceedings regarding the existence of irreparable harm to the claimant Floyd.

While we express no opinion regarding this issue on remand, we offer guidance on the proper characterization of irreparable harm. In rejecting irreparable harm as a required element of Rule 41(e) jurisdiction, the trial court cited a case indicating that "any deliberate violation of the fourth amendment is constitutionally irreparable." *Floyd,* 677 F.Supp. at 1087 (citing *In re Application of First United Fin. Corp.,* 620 F.Supp. 1450, 1452 (E.D.N.Y.1985)). We cannot approve of the application of this statement to the instant case.

First, neither of the parties suggest nor did the trial court hold in this case that any alleged fourth amendment violation was deliberate. Secondly, the Supreme Court has established that the exclusionary rule does not apply to all situations where an individual's fourth amendment rights have been violated. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (fruits of illegal search not suppressed when officer reasonably relied on facially valid warrant issued by a detached

and neutral magistrate); *Nix v. Williams,* 467 U.S. 431, 447, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377 (1984) (illegally seized evidence not suppressed "if the government can prove that the evidence would have been obtained inevitably"). Rule 41(e) is intended to implement the exclusionary rule. *E.g., United States v. Jackson,* 544 F.2d 407, 409 (9th Cir.1976). Considering the exceptions to that rule, it cannot be said that every individual whose fourth amendment rights are violated suffers irreparable harm such that Rule 41(e)'s remedial provisions are triggered.

Finally, the district court's approach in *In re Application of First United Fin. Corp.* does not reflect the proper role of irreparable harm in Rule 41(e) actions. That harm does not refer to the invasion of privacy occasioned by a wrongful search. While such harm may be redressed,[6] it has never been the role of the exclusionary rule, and thus Rule 41(e), to do so. *See U.S. v. Calandra,* 414 U.S. 338 at 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974) (purpose of exclusionary rule is to deter future unlawful conduct, not to redress the injury to the privacy of the search victim). Instead, irreparable harm refers to circumstances in which a Rule 41(e) movant cannot wait for a legal remedy, thus justifying the court's equitable jurisdiction. *See, e.g., Pieper v. United States,* 604 F.2d 1131, 1134 (8th Cir.1979) (irreparable harm if criminal indictment based on illegally seized evidence appears imminent); *In re Worksite Inspection of Quality Prods., Inc.,* 592 F.2d 611, 616 (1st Cir.1979) (availability and adequacy of statutory procedures affect irreparable harm finding); *Mr. Lucky Messenger Serv., Inc. v. United States,* 587 F.2d 15, 18 (8th Cir.1978) (irreparable harm may exist if Rule 41(e) movant needs funds to satisfy tax liability). On remand, the trial court should consider irreparable harm in this light and not with regard to the harm wrought by an allegedly wrongful search.

### B.

■ We reject the government argument that Rule 41(e) jurisdiction depends on the existence of a criminal proceeding. A number of circuits that have discussed Rule 41(e) have held or implied that a 41(e) motion may derive jurisdiction independent of any criminal action. *See In re Harper,* 835 F.2d at 1274; *Martinson,* 809 F.2d at 1366–67; *Angel–Torres,* 712 F.2d at 719; *Richey v. Smith,* 515 F.2d 1239, 1243 (5th Cir.1975). Moreover, the Supreme Court has recognized that Rule 41(e) motions may exist apart from criminal actions. In *DiBella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962), the Court discussed the independence of Rule 41(e) actions with regard to their appealability. According to the Court, pre-indictment motions to suppress evidence in a forthcoming criminal trial are not sufficiently independent of the criminal proceeding to merit immediate appellate review. *DiBella,* 369 U.S. at 129, 82 S.Ct. at 659. "Only if the motion is solely for return of property and is in no way tied to a criminal prosecution *in esse* against the movant can the proceedings be regarded as independent." *Id.* at 131–32, 82 S.Ct. at 660–61.

The government cites *In re Seizure Warrant,* 830 F.2d 372 (D.C.Cir.1987), in support of its claim. There, pursuant to a warrant issued under 21 U.S.C. § 881, a Drug Enforcement Administration (DEA) agent seized appellant's bank account for its suspected connection to drug trafficking. The appellant then filed a Rule 41(e) motion seeking a return of the property. The court quoted Fed.R.Crim.P. 54(b)(5) which states in relevant part that "[the Federal Rules of Criminal Procedure] are not applicable to ... civil forfeiture of property for violation of a statute of the United States." Fed.R.Crim.P. 54(b)(5). Thus, according to the court, because section 881 forfeiture is civil in nature and there was no related criminal proceeding, Rule 41(e) was inapplicable. *In re Seizure Warrant,* 830 F.2d at 374. Because we

---

**6.** *See* 42 U.S.C. § 1983 (action of state or local officers); *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (federal officers).

believe this reflects an erroneous construction of Rule 54(b)(5), we decline to follow it.

Fed.R.Crim.P. 54 describes the courts and proceedings that will be governed by the Federal Rules of Criminal Procedure. Because section 881 forfeitures are civil rather than criminal in nature, *see United States v. $39,000 in Canadian Currency,* 801 F.2d 1210 (10th Cir.1986), Rule 54(b)(5) provides that criminal rules will not be applicable in civil forfeitures of property. According to the definitions of terms following the rule, a civil action "refers to a civil action in a district court." Fed.R.Crim.P. 54 (Application of Terms). Thus, Rule 54(b)(5) stands for the proposition that the Federal Rules of Criminal Procedure will not govern a judicial civil forfeiture proceeding in district court. While Congress may wish to, rule 54(b)(5) says nothing about what remedies are available to an individual like Floyd whose property is held prior to the initiation of forfeiture proceedings of any kind.

The court in *In re Seizure Warrant* recognized the Supreme Court's suggestion that a 41(e) action was proper in the absence of a related criminal proceeding. *See In re Seizure Warrant,* 830 F.2d at 374 n. 1. The court in *In re Seizure Warrant* distinguished the Supreme Court's comment by saying that none of the relevant cases involved a seizure pursuant to a civil forfeiture action. *Id.* The seizure in this case, however, was not pursuant to a section 881 warrant as was the case in *In re Seizure Warrant.* Further, neither that case nor this one involved a civil forfeiture action in district court as contemplated by Rule 54. We thus decline to apply *In re Seizure Warrant,* and we hold that Rule 41(e) jurisdiction does not fail in the absence of a related criminal proceeding.

### C.

■ The government claims that regardless of the initial propriety of Rule

41(e) jurisdiction, the trial court lost that jurisdiction upon the government's filing of notice of an administrative forfeiture. In contrast, the trial court held that Floyd's Rule 41(e) remedy would not be precluded since he filed his motion before the government's initiation of the administrative forfeiture. *Floyd,,* 677 F.Supp. at 1087. Both approaches sanction a pure race to file or publish notice; a race we have disapproved. While we modify the trial court's analysis, that court did not abuse its discretion by retaining jurisdiction in this case.

The government cites *In re Harper,* 835 F.2d 1273 (8th Cir.1988), where the government commenced an administrative forfeiture after the claimant had filed a Rule 41(e) motion. The claimant in *Harper* failed to respond to the published notice of the administrative forfeiture within the time required by statute, and the forfeiture was completed. The trial court subsequently dismissed the Rule 41(e) motion and was affirmed on appeal. *Id.* at 1274. The government argues that this case controls our ruling. We disagree.

In *Harper,* the administrative forfeiture was apparently complete before any actual proceedings had begun on the Rule 41(e) motion. After noting the equitable nature of Rule 41(e) jurisdiction, the court said:

> Although Harper had knowledge of the pending forfeiture proceeding, he allowed the matter to finalize without challenging the forfeiture or seeking a stay of the proceedings.... Harper cannot pursue an equitable remedy in the district court when he did not challenge in any way the very proceeding that forfeited his property in the first place.

*Id.*[7]

In the instant case, Floyd filed his Rule 41(e) motion on September 18, 1987. The government claims that it instituted an administrative forfeiture on September 21, 1987, which corresponds to the day DEA agent Ann Canty forwarded paperwork to

---

**7.** The court in *Harper* also stated that "[t]o do so would be the equivalent of impermissibly using the Federal Rules of Criminal Procedure to attack a civil forfeiture." *Harper,* 835 F.2d at 1274 (citing *In re Seizure Warrant*). To the

extent *Harper* relies on Rule 54(b)(5) rather than equitable concerns to deny jurisdiction, we decline to follow it in accordance with our analysis in Part B.

the Washington, D.C., DEA office regarding the seizure. To apply *Harper,* we must determine when the administrative forfeiture was in fact instituted.

The statute and regulations governing 21 U.S.C. § 881 forfeitures provide for notice to interested parties of the government's intent to seek forfeiture of the property. *See* 19 U.S.C. § 1607; 19 C.F.R. § 162.45(b)(1). A claimant has twenty days from the date of first publication of notice to file a claim and cost bond. 19 U.S.C. § 1608. If the claimant so responds, the matter is referred to a United States attorney for institution of judicial forfeiture proceedings. *Id.* Otherwise, the forfeiture is complete when the twenty-day period elapses. 19 U.S.C. § 1609.

 The statutory notice serves at least two important purposes. It informs an interested party of the government's intent to seek forfeiture. Prior to publication of notice, an administrative officer may presumably conclude that the facts do not warrant such action. Second, formal notice begins the statutory period in which the administrative forfeiture will either be completed or will proceed to judicial forfeiture. Because of the importance of notice, we cannot agree with the government that a forfeiture was in any meaningful sense instituted on September 21, 1987, when agent Canty merely forwarded papers to Washington. The administrative forfeiture mechanism begins with the publication of notice. *United States v. United States Currency in the Amount of $2,857.00,* 754 F.2d 208, 212 (7th Cir.1985). According to the trial court record, notice was first published in the December 2, 1987, edition of U.S.A. Today.

Thus, *Harper* is clearly distinguishable from the instant situation. In *Harper,* statutory notice followed the Rule 41(e) filing promptly enough that the forfeiture was completed before any Rule 41(e) hearing. Here, the government does not contend that the forfeiture was completed. In fact, the forfeiture was not commenced until over two months after the Rule 41(e) motion was filed and more than a week after the Rule 41(e) hearing.

We agree with the court in *Harper* that the existence of an administrative forfeiture proceeding will affect a trial court's discretion to grant or retain Rule 41(e) equitable jurisdiction. When, as in *Harper,* the administrative forfeiture is promptly commenced, the trial judge may in his discretion dismiss a Rule 41(e) petition in favor of the administrative scheme. In the instant case, however, the trial court did not abuse that discretion by ruling on the Rule 41(e) motion when the administrative forfeiture was instituted after the Rule 41(e) hearing.[8]

### D.

 Lastly, the government argues that the legality of the search should not be determined under the Federal Rules as the arguably offensive search was conducted entirely by Denver police.[9] We disagree. Although the search was made by local police, the currency was subsequently taken into custody by federal officers. We therefore conclude that Rule 41(e) provides a proper means for contesting the legality of the search.

### III.

We reverse the trial court's conclusion that a showing of irreparable harm is unnecessary in determining jurisdiction over a Rule 41(e) motion for the return of property and remand this issue to the trial court for further proceedings consistent with this opinion. In view of this remand, we express no opinion on the standing and fourth amendment issues raised in this appeal.

**REVERSED AND REMANDED.**

---

8. The analysis here is similar to the discussion in Part (A.)(1.) above regarding the adequacy of a remedy pursuant to 19 U.S.C. § 1608. We discuss it separately in order to address the effect of *In re Harper.*

9. The trial court indicated that DEA agents participated in the search. *See Floyd,* 677 F.Supp. at 1086. As the government points out, however, there seems to be no dispute that the federal agents took custody of the currency after the search in question. *See* Reply Brief of Appellant at 1–2.