**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 6 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAEL WILLIAMS,

      Plaintiff-Appellant,

v.

JANET RENO, Attorney General of
the United States of America;
RICHARD LOYD, as an agent of the
Federal Bureau of Investigation; 12
UNNAMED AGENTS OF THE
FEDERAL BUREAU OF
INVESTIGATION,

      Defendants-Appellees.

No. 96-1367
(D.C. No. 96-Y-89)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY**, **EBEL**, and **KELLY**, Circuit Judges.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, *res judicata*, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

On March 18, 1988, approximately thirteen FBI agents executed a search warrant at the Evergreen, Colorado home of Plaintiff-Appellant Michael Williams. At that time, Williams was both a Democratic Party activist involved in the 1988 presidential campaign of Colorado Senator Gary Hart, and the president of Pioneer America Corporation, a Delaware corporation. The search warrant has not been included in the record on appeal, and it is thus unclear to this court exactly what the warrant authorized the FBI agents to seize. In any event, the parties to the present litigation give dramatically conflicting descriptions regarding what was actually seized.

The government claims that it seized approximately $27,000 in currency and gold coins, two typewriters and a personal computer, a large quantity of paperwork related primarily to the Pioneer America Corporation, and some papers and personal effects of Williams and his family, including birth certificates and passports.[1] (See Appellee's Br. at 3; R.O.A. Doc. 1 Sch. B at 3-15). Williams claims that the government seized cash, gold coins, silver coins, jewelry, a late model Saab automobile, computer equipment, German stamps, autographs of

_____

[1]It is undisputed that the government returned two of the gold coins, the two typewriters, and certain personal effects and documents belonging to Williams's family members, to Williams's (now ex-) wife Cary S. Murphy. (R.O.A. Doc. 1). Further, in 1992, the government returned the personal computer and related peripherals and accessories to William Stevens, a court-appointed Chicago attorney who had represented Williams at his 1988 arraignment and sentencing. (Id.).

famous people, books, paintings, phonograph records, cassette and reel-to-reel tapes (including tapes of unreleased recordings by John Lennon), television sets, stereo equipment, and an architect's lamp, valued at a total of over $250,000. (Appellant's Br. at 6-7; R.O.A. Doc. 1 at 2-4). Further, in addition to the business papers and personal effects that the government admits to having seized, Williams claims that the government also seized certain documents in Williams's possession pertaining to reports concerning an alleged failed assassination attempt. (Aplt.'s Br. at 1; R.O.A. Doc. 1 at 3-4). In Williams's view, the FBI agents were "particularly interested" in these documents. (Aplt.'s Br. at 1).

During the search of his house, Williams was arrested. After appearing before a federal magistrate judge in Denver, Colorado, Williams was eventually transported to Chicago, Illinois, where he was indicted by a grand jury on eighteen counts of alleged mail fraud and wire fraud in violation of 18 U.S.C. §§ 1342, 1343, 2314 (1988) (amended in 1989, 1990 & 1994). (R.O.A. Doc. 4 Attachment A). The indictment alleged that Williams had defrauded certain suppliers out of over $200,000 worth of computer paper, by ordering paper to be shipped to various warehouses throughout the United States (ostensibly to be used by the Pioneer America Corporation), and then reselling the paper to third parties, without paying or intending to pay the suppliers. (Id.).

On August 11, 1988, Williams plead guilty in the United States District Court for the Northern District of Illinois to one count of mail fraud and one count of wire fraud.[2] He was sentenced to a term of two years imprisonment and five years probation, and was also ordered to pay restitution to his victims during his term of probation. See 18 U.S.C. § 3663(a)(1) (1994 & Supp. 1996) (permitting a sentencing court to order restitution to victims). At sentencing, the court "authorize[d] that all property being held by the FBI can be and should be used as partial restitution." United States v. Williams, No. 94-2483, 81 F.3d 164,

---

[2]The proceedings against Williams were apparently brought in the Northern District of Illinois because Williams's largest single fraud victim, the Chicago Stock Tab Group, was located in that district. (See R.O.A. Doc. 4 Attachment A). In Williams's brief in the present case, he alleges that the case was improperly brought in the Northern District of Illinois in order to facilitate its assignment to Judge Leinenweber, the husband of then-Congresswoman Lynn Martin. Williams alleges that Congresswoman Martin was a national co-chairperson of the 1988 Bush/Quayle campaign, and that Martin's close ties to then-Vice President Bush rendered Judge Leinenweber incapable of giving Williams a fair trial.

We note that Williams filed no motion asking Judge Leinenweber to recuse, nor did Williams choose to go to trial. Judge Leinenweber approved Williams's plea agreement with the government, and Williams ascribes no particular faults to Judge Leinenweber's performance in Williams's criminal proceedings. Further, prior to filing the Fed. R. Crim. P. 41(e) motion in the present case, eight years after his initial appearance before Judge Leinenweber, Williams never raised any issue regarding Judge Leinenweber's fitness. We therefore agree with, and follow, the district court's decision to decline to address the issue. See United States v. Wright, 43 F.3d 491, 494 (10th Cir. 1994) ("A defendant who knowingly and voluntarily pleads guilty waives all non-jurisdictional challenges to his conviction. Having pleaded guilty, a defendant's only avenue for challenging his conviction is to claim that he did not voluntarily or intelligently enter his plea.") (internal citations and footnote omitted).

1996 WL 149348, slip op. at 2 (7th Cir. Mar. 27, 1996) (unpublished Order) (quoting Transcript of 1988 Sentencing Hearing).

By 1994, Williams had completed serving his prison term and was entering the final year of his probation. He had not, however, paid any restitution. Therefore, the United States District Court for the Northern District of Illinois granted the government's motion requesting permission to sell the gold coins seized in the 1988 raid on Williams's house, in order to distribute the proceeds (plus the cash seized in the 1988 raid) to Williams's fraud victims on a pro rata basis. Its Order was affirmed by the United States Court of Appeals for the Seventh Circuit. United States v. Williams, No. 94-2483, 81 F.3d 164, 1996 WL 149348 (7th Cir. Mar. 27, 1996) (unpublished Order). Pursuant to this Order, 59 gold coins were sold, and about $26,000 dollars were distributed to Williams's fraud victims.

While Williams's appeal was pending in the Seventh Circuit, Williams, through attorney Marc A. Pembroke,[3] filed a Fed. R. Crim. P. 41(e) Motion for Return of Property in the United States District Court for the District of

---

[3]Marc A. Pembroke is apparently a graduate of the Harvard Law School and a member of the Massachusetts bar, who is currently a sole practitioner in Chattanooga, Tennessee. As the district court noted, he is not a member of the Colorado bar, nor did he ever receive permission to practice before any federal court in Colorado.

Colorado.[4]  (R.O.A. Doc. 2).  In his motion, Williams conceded that the cash and gold coins at issue in the pending Seventh Circuit case could not be returned to Williams if the Seventh Circuit affirmed the Order of the United States District Court for the Northern District of Illinois.  Williams argued, however, that those assets represented only about one-tenth of the value of his total assets seized.  He correspondingly sought the return of the remaining assets that he claims were seized from his home on March 18, 1988.

The district court denied Williams's motion, for a variety of reasons.  First, the district court found that Williams neither resided in Colorado,[5] nor made any prima facie showing that any of the property subject to the motion might be found in the district of Colorado.  Williams v. Reno, No. 96-Y-89, slip op. at 1, 2 (D. Colo. July 12, 1996) (unpublished Order).   Second, the district court cited certain procedural defects with Williams's motion.  Id. at 2.  Third, the district court held that the doctrine of issue preclusion barred Williams from "relitigating" issues that Williams could have litigated in the Northern District of Illinois, in connection with his opposition to the government's 1994 motion requesting

---

[4]A Fed. R. Crim. P. 41(e) motion may be brought even after the completion of all criminal proceedings against the movant.  In that event, the district court should treat a Rule 41(e) motion as a civil complaint.  United States v. Rodgers, 108 F.3d 1247, 1250 n.4 (10th Cir. 1997).

[5]Following the conclusion of his probation, Williams relocated to Switzerland, where he presently resides.

permission to sell certain of Williams's seized assets and distribute the proceeds pursuant to the restitution order. Id. at 2-3. Fourth, the court held that the doctrine of laches barred Williams's motion, because Williams's eight-year delay in filing a Rule 41(e) motion was unexplained, unjustified, and prejudicial to the government. Id. at 3. Fifth and finally, the court found that "Williams has failed to establish prima facie the existence of the property subject to his motion, that such property was seized by the United States, or is in possession of the United States." Id. at 3.

The district court also noted that Williams had personally filed, *pro se*, an "Emergency Statement to the Court," alleging that Williams had been abandoned by his attorney, Marc Pembroke. Id. at 3. However, the court found that the "Emergency Statement" did not address the defects fatal to Williams's Rule 41(e) motion. Id. at 3. Thus, the court denied Williams's Rule 41(e) motion. Id. at 4.

Williams filed a timely notice of appeal, *pro se*. Subsequently, Williams also filed in this court, *pro se*, a "Motion to Order Attorney of Record to Appear To Show Cause For Abandonment of Client and To Strike From the Record All Pleadings." This Motion was followed by a *pro se* "Notice To The Court of Counsel Abandonment and Plaintiff's Statement." Finally, Williams filed in this court a *pro se* "Petition for Third Party Minor Claim To Ownership of Unlawfully

Seized Property," seeking to recover certain property belonging to his minor daughter, who was two years old on March 18, 1988.

We have jurisdiction over Williams's appeal pursuant to 28 U.S.C. § 1291 (1994). We review the district court's denial of Williams's Fed. R. Crim. P. 41(e) motion for the return of his property under the "abuse of discretion" standard. Frazee v. Internal Revenue Serv., 947 F.2d 448, 449 (10th Cir. 1991).

As a threshold matter, we note that the district court erred in concluding that venue was improper in Colorado because Williams neither resides in Colorado at present, nor made "any prima facie showing that any of the property subject to the motion might be found in the district of Colorado." Williams, slip op. at 1. Fed. R. Crim. P. 41(e) plainly states that "[a] person aggrieved . . . by the deprivation of property may move the district court *for the district in which the property was seized* for the return of the property on the ground that such person is entitled to lawful possession of the property." (emphasis added). It is undisputed that all of Williams's seized property was seized in Evergreen, Colorado. Rule 41(e) does not condition the propriety of venue on the claimant's current residence or the present location of the seized property. Thus, venue in Colorado was proper.

Nonetheless, we agree with the district court's conclusion that the equitable doctrine of laches necessitates the denial of Williams's Rule 41(e) motion. We

have said that a "a trial court's decision to grant jurisdiction over a Rule 41(e) motion for return of property should be governed by equitable principles."[6] <u>Floyd v. United States</u>, 860 F.2d 999, 1003 (10th Cir. 1988). As the district court noted, "he who seeks equity must do equity." <u>Herald Co. v. Seawell</u>, 472 F.2d 1081, 1099 (10th Cir. 1972). Thus, the district court need not entertain any Rule 41(e) motion that is brought in violation of any established principle of equity.

This court has recently described the equitable doctrine of laches as follows:

> Whether a claim is barred by laches must be determined by the facts and circumstances in each case and according to right and justice. Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. In order to prove the affirmative defense of laches, the defendant must demonstrate that there has been an unreasonable delay in asserting the claim and that the defendant was materially prejudiced by that delay.

<u>Hutchinson v. Pfeil</u>, 105 F.3d 562, 564 (10th Cir. 1997) (internal citations and quote marks omitted).

In the present case, Williams waited nearly eight years from the night his home was raided, before filing the present Rule 41(e) motion. We recognize that

---

[6]We recognize that Rule 41(e) was substantially redrafted in 1989, one year after our decision in <u>Floyd</u>, and that certain aspects of the <u>Floyd</u> decision no longer control our interpretation of Rule 41(e). <u>Compare</u> Fed. R. Crim. P. 41(e) <u>with</u> <u>Floyd</u>, 860 F.2d at 1002 n.1 (setting forth text of the former Rule 41(e)). Nonetheless, we have never reevaluated our holding in <u>Floyd</u> that a motion for the return of property is governed by equitable principles, and we see nothing in the current language of Rule 41(e) that would affect that principle.

Williams faced certain significant obstacles to filing. He was arrested during the March 18, 1988 raid on his home, and was thus unable, at that time, to determine precisely what property was seized. Further, the government, by its own admission, seized and never returned large quantities of Williams's paper records and documents, rendering it difficult for Williams to document the existence of other property that may have been seized. Following his arrest and subsequent conviction, Williams was imprisoned for two years. Finally, as Williams documents in his numerous filings here and in the district court, Williams has had an extremely bad run of luck in choosing and retaining attorneys to prosecute his case.

Nonetheless, we substantially agree with the district court's conclusion that Williams's delay in prosecuting this motion "is unexplained and unjustified." Williams, slip op. at 3. On March 18, 1988, Williams's wife Cary S. Murphy, who was not arrested, was present throughout the FBI raid. During the raid, the FBI agents who conducted the raid wrote out sixteen pages of handwritten lists of the items seized. (R.O.A. Doc. 1 Sch. B). Thirteen of the pages were signed by Ms. Murphy, and all sixteen were signed by FBI Special Agent in Charge Richard Loyd. (Id.). The government has always taken the position that this list was a complete and accurate inventory of the property seized. Further, operating under this assumption, the government returned some of the property to Ms. Murphy,

and some of the property to Williams's former attorney for Williams's benefit. The government then waited until Williams had nearly completed his five-year probation term (following his two-year prison sentence), before seeking (and receiving) permission to liquidate what it contends were all of Williams's remaining seized assets.

Thus, by 1996, when Williams *first* alleged that the government had seized more of Williams's property than the 1988 FBI records reflected: (1) eight years had passed; (2) Williams's full sentence had been served; (3) the government had liquidated or returned all the assets that it had ever purported to have seized from Williams; (4) the government had destroyed Williams's paper records and documents the return of which had never been requested; (5) the government had closed all of its files pertaining to Williams's case; and (6) Williams was unable to locate his ex-wife Cary S. Murphy, the only non-FBI Agent eyewitness to the events at issue.[7]

Under these circumstances, we believe that Williams's delay was unreasonable, and that the government was sufficiently prejudiced by the delay to justify the denial of Williams's motion. On this ground, we affirm the judgment of the district court.

---

[7]Williams's two year-old daughter was also an eyewitness to the events at issue, but, for obvious reasons, is not in a position to testify about those events.

Williams has also filed a "Motion to Order Attorney of Record to Appear To Show Cause For Abandonment of Client and To Strike From the Record All Pleadings," and a corresponding "Notice To The Court of Counsel Abandonment and Plaintiff's Statement." Based on the scant record before us, it does appear that Williams has been abandoned by his attorney-of-record Marc A. Pembroke. In a letter dated April 6, 1996, Pembroke wrote to Williams:

> I hope you understand that I cannot divulge details about my whereabouts on-line, nor can even my best friends always know where I am. Also, where I am isn't the same for too long, and sometimes there is a phone and sometimes there isn't. Nearby libraries are closed for the holidays, but if I can get some practice forms I'll send them along for your cert petition.
>
> Sorry not to be more available.

(R.O.A. Doc. 11 Exhibit A).

While this letter appears to constitute rather astonishing evidence of client neglect, we nevertheless deny Williams's Motion for two reasons. First, as discussed *supra*, Williams's Rule 41(e) motion, at this late date, would be barred by the equitable doctrine of laches regardless of whether Pembroke were ordered to show cause for his abandonment of Williams's cause, and regardless of whether Williams were permitted to withdraw his pleadings. Thus, granting Williams's motion would not assist Williams in prosecuting his Rule 41(e) motion. Second, we note that attorney Pembroke is not a member of any bar within our jurisdiction, and that we therefore lack general supervisory power over

his activities. Thus, nothing could be accomplished by requiring Pembroke to appear before us. We note that our present decision neither precludes Williams from seeking disciplinary action against Pembroke from an appropriate authority, nor precludes Williams from bringing a malpractice action against Pembroke in an appropriate forum.

Finally, Williams has filed in this court a *pro se* "Petition for Third Party Minor Claim To Ownership of Unlawfully Seized Property," seeking to recover certain property belonging to his minor daughter, who was two years old on March 18, 1988. No issue pertaining to any seized property owned by Williams's daughter was raised below. In general, we will not consider an issue that was not raised below. Walker v. Mathers (In re Walker), 959 F.2d 894, 896 (10th Cir. 1992). We see no reason here to depart from that general rule.

## CONCLUSION

The judgment of the district court denying Williams's motion for return of property under Fed. R. Crim. P. 41(e) is AFFIRMED. Williams's "Motion to Order Attorney of Record to Appear To Show Cause For Abandonment of Client and To Strike From the Record All Pleadings" is DENIED. Williams's "Notice To The Court of Counsel Abandonment and Plaintiff's Statement" is DULY

NOTED. Williams's "Petition for Third Party Minor Claim To Ownership of Unlawfully Seized Property" is DISMISSED.

The mandate shall issue forthwith.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge