Piedade Pedro DE ALMEIDA, Harber Corporation, Gatex Corporation, Mabon Corporation, Plaintiffs–Appellants,

v.

The UNITED STATES of America, Defendant–Appellee.

Docket Nos. 05–2337–cv(L), 05–2338–cv(CON), 05–2340–cv(CON), 05–2474–cv(CON).

United States Court of Appeals, Second Circuit.

Argued: Dec. 22, 2005.

Decided: July 28, 2006.

Bernard D'Orazio, Law Offices of Bernard D'Orazio, P.C., New York, NY, for Plaintiffs–Appellants.

Lisa P. Korologos, (Michael J. Garcia, United States Attorney for the Southern District of New York on the brief), New York, NY, for Defendant–Appellee.

Before JACOBS, LEVAL, STRAUB, Circuit Judges.

DENNIS JACOBS, Circuit Judge.

Petitioners moved under Fed. R.Crim. Pro. 41(g) for the return of New York bank accounts that they claim to own and that were seized by criminal forfeiture to the United States government. They appeal from the judgment of the United States District Court for the Southern District of New York (Castel, *J.*), dismissing their motion. The district court declined to exercise jurisdiction because it found that an adequate remedy at law was available via a 21 U.S.C. § 853 ancillary proceeding in the criminal forfeiture action then pending in the United States District Court for the District of New Jersey. Petitioners argue that the district court misinterpreted the statutory scheme for criminal forfeiture and misapplied equitable principles. We affirm the dismissal and find no abuse of discretion.

## I

Petitioners Harber Corporation, Gatex Corporation, and Mabon Corporation are privately-held corporations in the British Virgin Islands. Petitioner Piedade Pedro De Almeida is a natural person who resides in Brazil and is a citizen of Portugal. It is alleged that between 1993 and 2000, each petitioner opened a bank account at the Madison Avenue office of the Merchant's Bank of New York ("Merchant's Bank") for the business purpose of providing "foreign currency exchange services on a global basis for use in a wide variety of international personal and business transactions."

A branch employee—Maria Carolina Nolasco—was arrested in the District of New Jersey on June 27, 2002. The criminal complaint charged her with eight counts of tax and money-laundering violations and with operating a money-transmitting business without a license (in violation of 18 U.S.C. § 1960). The complaint also charged that Turist–Cambio Vaigens a Turismo, Ltda. ("Turist–Cambio"), a Brazilian corporation, operated an unlicensed money-transmitting business. According to the affidavit in support of the complaint, Turist–Cambio used "bank accounts in various names, including Gatex Corp. and Harber Corp., and the services of Maria Carolina Nolasco to conduct a money transmitting business in and through New Jersey and New York."

That same day, the United States government seized 39 bank accounts at Merchant's Bank pursuant to criminal seizure warrants issued by Magistrate Judge Stanley R. Chesler of the District of New Jersey.[1] Among these accounts are the several at issue in this proceeding, totaling approximately $5.6 million. The warrant applications stated that the accounts were used by Nolasco in connection with the unlicensed money transmitting business; that they were held in the names of shell companies and individuals that have no known legitimate business; that the shell companies and certain individuals (including the Petitioners) "are in the Black Market currency exchange business"; and that one of the signatories on Gatex Corporation and Harber Corporation accounts signed a claim of ownership with respect to funds held by Turist–Cambio. The United States has apparently not charged the Petitioners with any offense.

Nolasco posted bond and was released. On or about September 3, 2004, an indictment was returned by a federal grand jury sitting in Newark, New Jersey, charging Nolasco with the same eight counts alleged in the criminal complaint. The indictment further alleged criminal forfeiture under 18 U.S.C. § 982 for the violation of 18 U.S.C. § 1960 (Prohibition of Unlicensed Money Transmitting Businesses).

Later that fall, Nolasco pleaded guilty in the United States District Court for the District of New Jersey to the unlicensed operation of a money transmitting business and four counts of personal income tax evasion. On December 13, 2004, Judge Greenaway of that court entered a "Consent Judgment and Preliminary Order of Forfeiture," providing that the funds from the seized bank accounts, including the accounts at issue here, are forfeited to the United States under 18 U.S.C. § 982, and (by reference in 18 U.S.C. § 982) to 21 U.S.C. § 853. *See* 18 U.S.C. § 982(b)(1) (stating that forfeiture of property, including seizure in a judicial proceeding, shall be governed by 21 U.S.C. § 853). The procedure for asserting and determining third-party claims to property subject to criminal forfeiture, called an "ancillary proceeding," is set out in 21 U.S.C. § 853(n), discussed further below.

■ On May 14, 2004, Petitioners Harber Corporation and Gatex Corporation filed a "Motion to Return Property," under Fed. R.Crim. Pro. 41(g), in the Southern District of New York, seeking return of the funds seized from their Merchant's Bank accounts. The motion was made almost 22 months after Nolasco's arrest and the seizure of the accounts, and approximately three-and-a-half months before Nolasco's indictment. Substantially identical applications, in the same court, were filed by petitioners Mabon Corporation and De Almeida on October 28, 2004. Rule 41(g) provides, in relevant part:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized . . . .

"[W]here no criminal proceedings against the movant are pending or have transpired," relief under Rule 41(g) is equita-

---

1. Petitioners state that the seizure warrants relied on 18 U.S.C. § 1956: "Laundering of Monetary Instruments". This is inaccurate. The reference to Section 1956 is in the title of the warrant, ("THE CASH VALUE OF THE CONTENTS OF ACCOUNT NUMBER 9006556 INCLUDING ALL CURRENCY AND MONETARY INSTRUMENTS AS DEFINED BY 18 U.S.C. § 1956(c)(5) . . ."), but the United States points out that the reference to that subsection, which defines a "monetary instrument," was purely descriptive.

ble in nature. *See Mora v. United States,* 955 F.2d 156, 158 (2d Cir.1992).[2]

On September 3, 2004, the day Nolasco was indicted in New Jersey, the government moved in New York to dismiss the motion for lack of jurisdiction, on the ground that an ancillary proceeding is available in the District of New Jersey under 21 U.S.C. § 853(n), and constitutes an adequate remedy at law. The government moved to dismiss the motions by Mabon Corporation and De Almeida on the same ground. The Rule 41(g) motions were deemed related and both actions were assigned to Judge Castel.

On April 7, 2005, the district court dismissed the Rule 41(g) motions. The Court's Memorandum and Order concluded that the equities weighed against the exercise of jurisdiction. Among other considerations, the district court concluded that Petitioners can pursue relief through ancillary proceedings in New Jersey and that exercising jurisdiction in New York would risk inconsistent resolutions.

Petitioners timely appealed. While this appeal was pending, the ancillary proceedings in New Jersey (commenced after the filing of this appeal) were conducted and Judge Greenaway issued an order dated June 7, 2006 granting summary judgment to the Petitioners and invalidating the forfeiture order with respect to Petitioners' funds. On June 20, 2006, however, the United States Attorney's Office in New Jersey was served with an order entered by the New York State Supreme Court, authorizing the seizure of property owned by various entities, including Petitioners. The United States Attorney's Office in-formed Judge Greenaway that—pursuant to the order—the funds would be turned over to the New York County District Attorney's Office. The record does not show whether the United States Attorney's Office has turned over the funds.

Petitioners' appeals, which have been consolidated, argue: [i] that the statutory scheme for criminal forfeiture and ancillary proceedings affects disposition only of property owned by a criminal defendant, and therefore does not apply to the bank accounts of Petitioners (who have not been charged); and [ii] that, even if ancillary proceedings are applicable and available, principles of equity weigh in favor of exercising jurisdiction over their Rule 41(g) motion in the Southern District of New York.

## II

■ The United States has argued that this appeal is moot, but events have not quieted this controversy. The government urges dismissal of this appeal because Petitioners' claims to the funds have been adjudicated and Petitioners prevailed. Petitioners have not, however, received their funds from the United States Attorney's Office who, when last heard from, planned on turning over the funds to the New York County District Attorney's Office but had not done so yet. This appeal is therefore not moot: If we were to find that the district court's dismissal was an abuse of discretion, Petitioners may still be able to use the mechanism of the Rule 41(g) motion to seek their funds.

**2.** Rule 41 was reorganized in 2002. Previously, the subsection addressing motions to return property was Rule 41(e). In 2002, this subsection was redesignated Rule 41(g) without substantive change. Accordingly, courts have applied the case law concerning former Rule 41(e) to the current Rule 41(g). *See generally* 3A Charles Alan Wright, Nancy J. King & Susan R. Klein, FEDERAL PRACTICE AND PROCEDURE· CRIMINAL 3d § 673 (2004). This opinion therefore refers to former Rule 41(e) as Rule 41(g) or as Rule 41[ (g)].

## III

 Petitioners contend that ancillary proceedings provided under 21 U.S.C. § 853(n) are inappropriate for third parties claiming ownership of property subject to criminal forfeiture. The government sought forfeiture under 18 U.S.C. § 982, which provides, in relevant part:

> The court, *in imposing sentence on a person convicted of an offense in violation of section* 1956, 1957, or *1960* of this title [18 USCS § 1956, 1957, or 1960], *shall order that the person forfeit* to the United States *any property,* real or personal, *involved in such offense,* or any property traceable to such property.

18 U.S.C. § 982(a)(1) (brackets in original) (emphasis added); *see also* 21 U.S.C. § 853(a)(1) (explaining that such property includes "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation"). The statutory wording makes sufficiently clear that criminal forfeiture is not a measure restricted to property owned by the criminal defendant; it reaches *any* property that is "involved" in the offense. The likelihood that some property involved in an offense will be owned by persons other than the criminal defendant is reflected in the provision for an ancillary proceeding. Section 853(n), entitled "Third party interests", provides:

> *Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited* to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice

under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property....

(Emphasis added.) An ancillary proceeding is evidently the *only* avenue for a post-indictment third-party claim to forfeited property, because the statutory scheme bars commencement of "an action at law or equity against the United States concerning the validity of [a third party's] alleged interest in the property ... subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section." 21 U.S.C. § 853(k); *see United States v. Nava,* 404 F.3d 1119, 1125 (9th Cir.2005) (explaining that Section 853(k) "bars third parties ... from bringing independent suits against the United States once an indictment alleging that the property is subject to forfeiture has been filed"); *United States v. Puig,* 419 F.3d 700, 703 (8th Cir.2005); *United States v. Gilbert,* 244 F.3d 888, 907 n. 48 (11th Cir.2001).

 That bar does not in plain terms affect the Rule 41(g) motions of Harber Corporation and Gatex Corporation, which were filed before Nolasco's indictment. At the same time, nothing inhibits the use of ancillary proceedings *after* a Rule 41(g) motion has been filed. Recognizing that it had discretionary power to go forward under Rule 41(g), the district court declined to exercise it.[3] *See, e.g., Floyd v. United States,* 860 F.2d 999 (10th Cir.1988) (explaining that it was within a court's discretion to decline to exercise jurisdiction over a Rule 41[ (g)] motion when an administra-

---

3. Certain passages of the district court's ruling could be read to mean that the court mistakenly believed it lacked subject matter jurisdiction. *See, e.g., Gatex Corp. v. United States,* 04 Civ. 3729, 2005 WL 821516, *4 (S.D.N.Y. April 7, 2005) ("The government's motion to dismiss for lack of subject matter jurisdiction is granted."). However, we think it is clear from a full reading of the opinion that the court correctly recognized it had subject matter jurisdiction but equitably declined to exercise that jurisdiction in view of the pending New Jersey proceeding.

tive forfeiture proceeding had been commenced after the motion had been filed).

## IV

■■ A Rule 41(g) motion is an equitable remedy that is available only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction. *See U.S. (Drug Enforcement Agency) v. One 1987 Jeep Wrangler Automobile*, 972 F.2d 472, 479 (2d Cir.1992). Jurisdiction under Rule 41 " 'is to be exercised with great restraint and caution since it rests upon the court's supervisory power over the actions of federal law enforcement officials.' " *Application of Campola*, 543 F.Supp. 115, 117 (N.D.N.Y. 1982) (quoting *Fifth Avenue Peace Parade Committee v. Hoover*, 327 F.Supp. 238 (S.D.N.Y.1971), *aff'd* 480 F.2d 326; *see also Floyd v. United States*, 860 F.2d 999, 1003 (10th Cir.1988)) ("Rule 41[ (g)] jurisdiction should be exercised with caution and restraint.") (citing *Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir.1974)).

We have not previously reviewed the dismissal of a Rule 41(g) motion in favor of a pending criminal forfeiture proceeding; but we have upheld dismissal where the government had commenced a civil forfeiture proceeding. In *In Re One 1987 Jeep Wrangler Automobile*, we observed that where "the claimant is afforded the opportunity to test the legality of the seizure in the forfeiture proceeding," relegating the claimant to that proceeding would avoid problems inherent in parallel proceedings. 972 F.2d 472, 479 (2d. Cir.1992). Other Circuits have similarly held that a pending administrative or civil forfeiture proceeding affords an adequate remedy at law and thereby justifies dismissal of the Rule 41(g) motion. *See United States v. Price*, 914 F.2d 1507, 1511 (D.C.Cir.1990) (*per curiam* ) ("Accordingly, we now hold that once the Government initiates an adminis-

trative forfeiture proceeding and the property is not the subject of an ongoing criminal proceeding, the District Court has no jurisdiction to resolve the issue of return of property."); *Shaw v. United States*, 891 F.2d 602, 603–04 (6th Cir.1989) (explaining that Rule 41[ (g)] is an equitable remedy, and "[u]nder standard equity doctrine, where there is an adequate remedy at law it must be pursued"); *United States v. Castro*, 883 F.2d 1018, 1019 (11th Cir.1989) (per curiam) ("It is well-settled that the proper method for recovery of property which has been subject to civil forfeiture is not the filing of a Rule 41[ (g)] Motion, but filing a claim in the civil forfeiture action."); *United States v. United States Currency $83,310.78*, 851 F.2d 1231, 1233–35 (9th Cir.1988); *In re Harper*, 835 F.2d 1273, 1274–75 (8th Cir.1988) (district court did not abuse discretion in not exercising equitable jurisdiction under Rule 41[ (g)] after government instituted forfeiture proceeding).

■ The analogy between civil and criminal forfeiture is imperfect: A third-party claimant contesting a criminal forfeiture may lack an adequate remedy at law if the claimant faces months or years of delay before the claimant may seek an ancillary proceeding in the criminal forfeiture action. This potential inadequacy is not present here and now, however, because there has been a conviction and an ancillary proceeding has been conducted (and concluded). The Rule 41(g) motion thus offers these Petitioners no appreciable procedural advantage over the ancillary proceeding.

Petitioners complain that the District Court in New York has compelled Petitioners—who have been charged with no criminal conduct—to go to another jurisdiction to assert and establish their ownership rights, after the property was seized without notice or hearing, and was held by the

government for over two years before it brought an action for forfeiture. Petitioners have a point; and the district court may have had discretion to rule in their favor. But there are countervailing circumstances that support the discretionary ruling that was made. The property had been seized for almost a year in New Jersey before the first motions were filed by Petitioners in New York; the court and the government lawyers in New Jersey presumably have familiarity with the underlying criminal proceeding and with how the disputed bank accounts were used or not in connection with the criminal offenses; and the court in New Jersey acted promptly in resolving Petitioners' claims. Moreover, the record does not disclose any connection of the Petitioners to the Southern District of New York other than the location there of bank accounts that they claim and that the government alleges were used to commit criminal conduct in New Jersey. In light of the remedy available to Petitioners in New Jersey, the harm asserted by them, and the serious risk of duplicative proceedings and conflicting results, we see no abuse of discretion in the district court's dismissal.

Our disposition of the appeal is to affirm the ruling of the district court; however, because Petitioners have still not received their funds and must now await developments in New Jersey and New York, we recognize the possibility that the district court may want to reconsider its ruling. Our judgment of affirmance should not be deemed to preclude the district court from reopening its judgment upon a new application if it is so disposed.

For the reasons set forth above, the judgment of the district court is affirmed. The mandate shall issue forthwith.